IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| LESLEY EUGENE WARREN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:05-CV-260 |
| | ) | |
| WARDEN MARVIN POLK, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

Lesley Eugene Warren, a prisoner of the State of North Carolina, was convicted and sentenced to death for the 1990 murder of Katherine Johnson. The aggravating factor on which the death penalty rested was two previous convictions for capital murder. His conviction was affirmed on appeal. *State v. Warren*, 348 N.C. 80, 499 S.E.2d 431 (1998). After a motion for appropriate relief was denied in state court, Mr. Warren filed this petition for a writ of habeas corpus challenging his conviction and sentence. The matter was stayed until May 2015 pending additional state court proceedings. After the stay was listed, supplemental briefing was filed, and the petition is ripe for resolution.

Mr. Warren asks this Court to vacate his conviction and sentence based on numerous alleged constitutional violations. The Court finds no constitutional violation and denies the petition.

# I.    Facts[1] and Procedural History

Mr. Warren was indicted in September 1990 and convicted in March 1996 for the July 15, 1990, murder of Ms. Johnson in High Point, North Carolina. *Id.* at 91, 499 S.E.2d at 436. He was found guilty and sentenced to death. *Id.*

Before Mr. Warren met Ms. Johnson in High Point in July 1990, he was a suspect in murders committed in Asheville, North Carolina, and Spartanburg, South Carolina. *Id.* at 93-94, 499 S.E.2d at 437-38. On May 28, 1990, Asheville police questioned Mr. Warren about the May 24 disappearance of Jayme Hurley. *Id.* at 93, 499 S.E.2d at 437. Mr. Warren admitted that he had seen Ms. Hurley on that day, and he consented to a search of his van. *Id.* The police found Ms. Hurley's pocketbook in the van. *Id.*

After informing Mr. Warren of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), an officer obtained a waiver of those rights and continued questioning Mr. Warren about Ms. Hurley. *Warren*, 348 N.C. at 93, 499 S.E.2d at 437. Mr. Warren requested counsel during the questioning, but police continued to question him, hoping that Ms. Hurley was still alive. *Id.* Mr. Warren eventually told the officer that Ms. Hurley had died from a cocaine overdose and that he had thrown her body in the French Broad River. *Id.* Police arrested Mr. Warren on an outstanding warrant for failure to produce a title to a motor vehicle and for misdemeanor larceny of Ms. Hurley's pocketbook. *Id.*

---

[1] The factual history of the case comes from the North Carolina Supreme Court's direct appeal opinion, *State v. Warren*, 348 N.C. 80, 91-95, 499 S.E.2d 431, 436-38 (1998).

At a June 7 bond hearing, the district attorney stated that he anticipated filing additional charges against Mr. Warren, but he declined to do so at the time. *Id.* at 93, 499 S.E.2d at 437-38. Mr. Warren was released on bond and retrieved his van at the police department. *Id.* at 93, 499 S.E.2d at 438. While there, Mr. Warren gave blood, hair, and urine samples and agreed to return the next day for more questioning. *Id.* Mr. Warren did not return. *Id.* In the meantime, police in South Carolina obtained a warrant for Mr. Warren's arrest for first-degree murder and kidnapping. *Id.* at 94, 499 S.E.2d at 438.

On July 15, Mr. Warren attended a picnic for Radisson Hotel employees in High Point with Terri Quinby, a hotel employee, and her family. *Id.* at 91, 499 S.E.2d at 436. Ms. Quinby introduced Mr. Warren to Ms. Johnson, who worked at the hotel gift shop. *Id.* After the picnic, Mr. Warren, the Quinbys, Ms. Johnson, and several others went to an Applebee's restaurant, where Mr. Warren told Ms. Quinby's brother, Freddy Ferguson, that he was interested in Ms. Johnson as a sexual conquest. *Id.* at 91-92, 499 S.E.2d at 436-37. The group then went to the house of Ms. Quinby's sister to have dinner. *Id.* at 92; 499 S.E.2d at 437. Ms. Johnson rode to dinner with Mr. Warren on his motorcycle. *Id.*

At 9:00 p.m., the group went to Ms. Quinby's house, where Mr. Warren and Ms. Johnson stayed on the porch until leaving for a motorcycle ride. *Id.* Witnesses saw them pass Ms. Quinby's house on the motorcycle at around 11:30 p.m. *Id.* Approximately an hour later, Mr. Warren returned to Ms. Quinby's home without Ms. Johnson to retrieve Ms. Johnson's car. *Id.* He stated that Ms. Johnson could not drive and that the two of them were going to get a room at the Town House Motel. *Id.* The next morning, Mr.

Warren was discovered sleeping on Ms. Quinby's couch. *Id.* He explained that Ms. Johnson had stayed at the hotel and then taken her car to a class she had that morning. *Id.*

On July 20, High Point police executed the South Carolina first-degree murder warrant and arrested Mr. Warren at Ms. Quinby's house. *Id.* at 92, 94, 499 S.E.2d at 437-438. The police searched Mr. Warren and discovered the keys to Ms. Johnson's car. *Id.* at 92, 499 S.E.2d at 437. High Point police brought Mr. Warren to Asheville, where Mr. Warren waived his *Miranda* rights. *Id.* at 94, 499 S.E.2d at 438. Police questioned him about the murders in Asheville and South Carolina, and an additional murder in New York. *Id.* During that questioning, Mr. Warren confessed to murdering Ms. Hurley in Asheville, as well as to the South Carolina and New York murders. *Id.* Mr. Warren then confessed to murdering Ms. Johnson. *Id.* He signed a statement confessing to all four murders on July 21. *Id.*

Mr. Warren told Asheville police that he and Ms. Johnson had sex in a soccer field, that he placed Ms. Johnson's body in the trunk of her car, and that he parked the car in a parking deck near the Radisson Hotel. *Id.* at 92, 499 S.E.2d at 437. Police found the car and Ms. Johnson's naked body in the trunk. *Id.* Her bra was wrapped around her neck. *Id.* Police found Mr. Warren's fingerprints on the outside of the driver's door and his palm print on the outside of the trunk. *Id.* Police later found Ms. Johnson's shoes in a nearby athletic field. *Id.*

Because the body found in the trunk was decomposing, Ms. Johnson had to be identified using dental records. *Id.* After performing an autopsy, the pathologist

concluded that the cause of death was asphyxia due to strangulation, indicated by areas of hemorrhage on Ms. Johnson's neck. *Id.*

Mr. Warren was convicted of the murder of Velma Gray in South Carolina in 1993. *See* Doc. 13 at 4. He pled guilty to first-degree murder and larceny of Ms. Hurley in February 1995 in Buncombe County Superior Court. *State v. Warren*, 347 N.C. 309, 315, 492 S.E.2d 609, 612 (1997). Following a sentencing hearing, the jury recommended Mr. Warren be sentenced to death. *Id.* The North Carolina Supreme Court affirmed Mr. Warren's conviction and sentence in the Buncombe County case on November 7, 1997. *Id.*

After he was convicted and sentenced in the South Carolina and Buncombe County cases, Mr. Warren was tried in the present case in Guilford County Superior Court; he was convicted of first-degree murder and sentenced to death. *Warren*, 348 N.C. at 91, 499 S.E.2d at 436. The sole aggravating factor upon which the death sentence was based was that Mr. Warren "had been previously convicted of another capital felony." N.C. Gen. Stat. § 15A-2000(e)(2); *see* Doc. 4 at 42. In support of this factor, the prosecution introduced Mr. Warren's 1993 South Carolina murder conviction and his 1995 Asheville murder conviction. *See Warren*, 348 N.C. at 118, 499 S.E.2d at 452. The North Carolina Supreme Court affirmed his conviction and sentence on May 8, 1998. *Id.* at 80, 499 S.E.2d at 431.[2]

---

[2] At trial, Mr. Warren's attorneys were John Bryson and Randall May. Mr. Bryson also represented Mr. Warren on direct appeal, where he was joined by new counsel, Stanley Hammer. Doc. 4-2 at 36.

Mr. Warren filed a motion for appropriate relief (MAR) in Guilford County Superior Court on July 12, 1999. Doc. 50 at 3. The court denied the MAR on July 3, 2002. *Id.* The North Carolina Supreme Court denied his petition for a writ of certiorari on February 3, 2005. *State v. Warren*, 359 N.C. 286, 610 S.E.2d 714 (2005). Pursuant to the North Carolina Racial Justice Act, Mr. Warren filed an additional MAR on August 5, 2010, in Guilford County. Doc. 50 at 3. That MAR remains pending. *Id.*

In his initial state post-conviction proceeding in Buncombe County, Mr. Warren's attorneys filed a motion for discovery under N.C. Gen. Stat. § 15A-1415(f). Doc. 49 at 3. Mr. Warren then filed an MAR in the superior court on April 1, 1999, and advised the court that the State had not responded to his request for discovery. *Id.* at 4. On July 3, 2003, the State, after being directed by the court, responded to Mr. Warren's MAR. *Id.* The superior court denied the MAR on November 7, 2003, without ruling on the motion for discovery. *Id.* Mr. Warren filed a motion to reconsider and another motion for discovery in the superior court. *Id.* at 5. These motions remain pending. *Id.* Mr. Warren also filed a motion in the North Carolina Supreme Court for an extension of time in which to file a petition for a writ of certiorari. *Id.* The court granted that motion on March 12, 2004. *Id.*

Pursuant to 28 U.S.C. § 2254, the Anti-Terrorism and Effective Death Penalty Act (AEDPA), Mr. Warren filed the current petition for a writ of habeas corpus on April 29, 2005, challenging the Guilford County conviction and sentence for the murder of Ms. Johnson. Doc. 4 at 1. On November 17, 2005, this Court granted Mr. Warren's motion to hold the case in abeyance pending the resolution of state post-conviction challenges to

the convictions that served as the bases for the aggravating factor in this case. Doc. 23.

The Court lifted the stay on May 15, 2015. Doc. 47.

## II.    Grounds for Relief

Mr. Warren has asserted eighteen grounds supporting his claim that his

constitutional rights were violated during his trial for the murder of Ms. Johnson. Doc. 4

at 12-45; Doc. 4-2 at 1-6. A summary of his argument supporting each ground follows.

- Ground One:  The underlying capital convictions that were the bases for the sole aggravating circumstance are infirm.  Their reversal would invalidate the death sentence in this present case.

- Ground Two:  Statements Mr. Warren made in the investigation of the present case and the Buncombe County case were obtained in violation of his Fifth and Sixth Amendment rights to counsel.

- Ground Three:  At the time of the crime in the present case (1990), North Carolina law allowed for the aggravating circumstance, "the defendant had been previously convicted of another capital felony," N.C. Gen. Stat. § 15A-2000(e)(2), and interpreted "previously convicted" in jury instructions as "convicted and not merely charged." Doc. 4 at 17.  Mr. Warren was not convicted of the underlying murders until after the present crime occurred.  By allowing the jury to find the (e)(2) aggravating factor based on capital convictions at the time of sentencing (1996), rather than at the time of the offense (1990), the state court violated clearly established Supreme Court law by retroactively applying a new interpretation of the statute.

- Ground Four: The State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by not disclosing impeachment and mitigating evidence.

- Ground Five: Insufficient evidence to prove first-degree murder.

- Ground Six: Prosecutorial misconduct through improper suggestions, insinuations, and assertions during both phases of the trial.

- Ground Seven: The trial court erroneously allowed prejudicial and inflammatory evidence before the jury, violating the Eighth and Fourteenth Amendments.

- Ground Eight: A jury instruction that the jury could consider evidence of flight to show consciousness of guilt violated Mr. Warren's due process rights.

- Ground Nine: Trial counsel were constitutionally ineffective because counsel did not object to the prosecution's leading questions.

- Ground Ten: Trial counsel were constitutionally ineffective because counsel did not object to improper instructions from the trial court.

- Ground Eleven: Trial counsel were constitutionally ineffective because counsel did not object to an erroneous jury sentencing form.

- Ground Twelve: Trial counsel were constitutionally ineffective because counsel did not move to strike and request a cautionary instruction after an expert revealed that Mr. Warren was currently on death row.

- Ground Thirteen: Trial counsel were constitutionally ineffective because counsel did not object to the prosecutor's reference to Mr. Warren's being on death row.

- Ground Fourteen:  Trial counsel were constitutionally ineffective because counsel argued that the trial judge should submit the South Carolina conviction as support for the aggravating circumstance (e)(2).

- Ground Fifteen:  Submission of the South Carolina conviction as support for aggravating circumstance (e)(2) violated Mr. Warren's rights to a fair and impartial sentencing hearing and to freedom from cruel and unusual punishment.

- Ground Sixteen:  The State used evidence of an invalid prior conviction to support the aggravating circumstance (e)(2).

- Ground Seventeen:  The trial court erroneously denied an instruction on Mr. Warren's parole eligibility when future dangerousness was at issue.

- Ground Eighteen:  The trial judge erred by not recusing himself from MAR proceedings.

### III.    Discussion

A.  <u>Standard of Review</u>

This Court must apply a highly deferential standard of review to habeas corpus claims "adjudicated on the merits in State court proceedings."  28 U.S.C. § 2254(d); *see Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).  More specifically, the Court may not grant relief unless the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[C]learly established Federal law" includes only "the holdings, as opposed to the dicta," of the United States Supreme Court. *Williams*, 529 U.S. at 412. A state court decision is "contrary to" United States Supreme Court precedent if the state court decision either "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent." *Id.* at 405-06.

A state court decision involves an "unreasonable application" of Supreme Court case law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case."[3] *Id.* at 407. "Unreasonable" does not mean merely "incorrect" or "erroneous." *Id.* at 410-11. "[E]ven 'clear error' will not suffice." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

---

[3] A state court decision also involves an unreasonable application of federal law if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407.

Section 2254 provides that the state court's determination of factual issues is "presumed to be correct" and may only be overturned by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Lenz v. Washington*, 444 F.3d 295, 300 (4th Cir. 2006). Additionally, a federal court "will not overturn the [trial] court's credibility judgments unless its error is 'stark and clear.'" *Elmore v. Ozmint*, 661 F.3d 783, 850 (4th Cir. 2011) (quoting *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008)).

B. Procedural Bar

"A federal habeas court may not review a claim when a state court has declined to consider its merits on the basis of an independent and adequate state procedural rule." *Bacon v. Lee*, 225 F.3d 470, 476 (4th Cir. 2000) (citations omitted); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32, 750 (1991) (defining the federal habeas court's role vis-à-vis procedurally barred claims). To be considered independent and adequate, a state procedural rule must not "depend[] on a federal constitutional ruling," *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985), and must be "firmly established and regularly followed." *James v. Kentucky*, 466 U.S. 341, 348 (1984). A federal habeas court may not determine "whether the state court correctly applied its own law," but should determine only if that law is "adequate and independent." *Williams v. French*, 146 F.3d 203, 209 (4th Cir. 1998).

A federal court may review a claim that has been procedurally barred only if the petitioner shows legitimate cause for the default and actual prejudice resulting from it. *Maples v. Thomas*, 132 S. Ct. 912, 922 (2012) (citing *Coleman*, 501 U.S. at 750); *see also McCarver v. Lee*, 221 F.3d 583, 591-92 (4th Cir. 2000). To show cause, a petitioner may

make "a showing that the factual or legal basis for a claim was not reasonably available to counsel." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To establish prejudice, a petitioner must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). A petitioner may also overcome a procedural bar by demonstrating that the court's failure to consider the claim will result in a fundamental miscarriage of justice. *Hedrick v. True*, 443 F.3d 342, 359 (4th Cir. 2006) (citing *Coleman*, 501 U.S. at 750). This exception applies to cases involving extraordinary instances "where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." *Dretke v. Haley*, 541 U.S. 386, 393 (2004) (quoting *Murray*, 477 U.S. at 496).

The State contends that a number of Mr. Warren's ineffective assistance of counsel claims are procedurally barred because the state MAR court found they could have been raised on direct appeal. Specifically, the State contends that Grounds Nine, Ten, Eleven, Twelve, Thirteen, and Fifteen are procedurally barred under N.C. Gen. Stat. § 15A-1419(a)(3). Doc. 7 at 4-6; Doc. 8 at 2-3. It is undisputed that Mr. Warren did not raise these grounds on direct appeal and raised them for the first time in his MAR.

North Carolina law requires defendants to raise all issues on direct appeal that "the defendant was in a position to adequately raise." N.C. Gen. Stat. § 15A-1419(a)(3). Failure to raise the issue allows the MAR court to deny the claim as procedurally barred. *See Lawrence v. Branker*, 517 F.3d 700, 714-15 (4th Cir. 2008) (recognizing § 15A-

1419(a)(3) as an adequate and independent state ground for procedural default); *State v. Fair*, 354 N.C. 131, 166, 557 S.E.2d 500, 524-25 (2001) (stating that § 15A-1419(a)(3) requires North Carolina courts to determine if the claim could have been brought on direct review based on the record on appeal).

Mr. Warren asserts that his direct appeal counsel were not in a position to raise ineffective assistance of counsel claims on direct appeal because they were also trial counsel. Doc. 13-5 at 3-4. The State, in support of the procedural bar, points out that only one of Mr. Warren's trial counsel represented him on direct appeal and that his new direct appeal counsel could have raised ineffective-assistance claims without conflict. Doc. 71 at 8-9. The State further contends that the Fourth Circuit has ruled that this procedural bar is adequate and independent. *Id*. at 7-8.

"[T]he Supreme Court of North Carolina has held that ineffective assistance claims brought on collateral review are procedurally defaulted under § 15A-1419(a)(3) when the 'cold record' reveals that no further investigation would have been required to raise the claim on direct review." *Lawrence*, 517 F.3d at 715 (quoting *Fair,* 354 N.C. at 166, 557 S.E.2d at 524). Similarly, the Fourth Circuit has consistently found that subsection (a)(3) is an adequate and independent state procedural rule for purposes of procedural default of ineffective assistance of counsel claims. *Id.* at 714; *McCarver*, 221 F.3d at 589-90; *Williams*, 146 F.3d at 209. The Fourth Circuit, however, has not addressed a case in which North Carolina post-conviction courts applied the (a)(3) procedural bar in a case where trial counsel were the same as direct appeal counsel.

An argument can be made for finding good cause to excuse a procedural bar occasioned by counsel's failure to raise on appeal his own ineffective assistance of counsel at trial. *Cf. Juniper v. Davis*, 737 F.3d 288, 289 (4th Cir. 2013) (noting that for post-conviction counsel, "a clear conflict of interest exists in requiring [petitioner's] counsel to identify and investigate potential errors that they themselves may have made" (quoting *Gray v. Pearson*, 526 F. App'x 331, 334 (4th Cir. 2013) (unpublished))). The Court need not delve into this minefield, however, as Mr. Warren must also show that the defaulted claims have merit. *See, e.g.*, *Maples*, 132 S. Ct. at 927-28 (finding cause but remanding for analysis of actual prejudice before excusing a procedural default). As discussed in detail below, none of them do.

C. <u>Ground One</u>

In Ground One, Mr. Warren contends that his Buncombe County and South Carolina convictions are infirm. Doc. 4 at 12. Because they were the evidentiary bases for the sole aggravating factor found in the present case, reversing these convictions would invalidate Mr. Warren's death sentence. *See Johnson v. Mississippi*, 486 U.S. 578, 583-84 (1988).

As of now, neither conviction has been found infirm, nor does this Court have jurisdiction to rule on the validity of these other convictions. *See Custis v. United States*, 511 U.S. 485, 496-97 (1994). The Court, therefore, denies Ground One without prejudice, should one or both of these convictions be vacated.

D. Ground Two

In Ground Two, Mr. Warren asserts that the Asheville police obtained his confession to the murder of Ms. Johnson in violation of his Fifth and Sixth Amendment rights to counsel. Doc. 4 at 14-16. Mr. Warren invoked his right to have counsel present during interrogation on May 29, 1990, when Asheville police questioned him about the disappearance of Ms. Hurley. *Warren*, 348 N.C. at 93, 499 S.E.2d at 437. Police then charged him with misdemeanor larceny, and Mr. Warren was represented at his bond hearing on June 7, 1990. *Id.*

When High Point police arrested and returned Mr. Warren to Buncombe County on July 20, 1990, Mr. Warren waived his *Miranda* rights and did not invoke his right to have counsel present. *Id.* at 94, 499 S.E.2d at 438. He then confessed to the murders of Ms. Hurley and Ms. Johnson. *Id.*

Mr. Warren contends that, upon his request for counsel on May 29, his rights to counsel attached, and he could not later waive them. Doc. 13 at 15-17. Mr. Warren presented this ground to the North Carolina Supreme Court on direct appeal, and the court rejected it on the merits. *Warren*, 348 N.C. at 96, 98, 499 S.E.2d at 439, 441. The state court held that because the police released Mr. Warren from custody after he had invoked his right to counsel, the trial court did not err in refusing to suppress the confession he gave after an arrest some six weeks later for a crime that he had not even committed when he had first invoked his right to counsel. *Id.* at 96-98, 499 S.E.2d at 439-41. Because the state supreme court denied this ground on the merits, this Court must determine whether that denial was contrary to or an unreasonable application of

clearly established federal law or based upon on an unreasonable determination of the facts.

### 1. The Fifth Amendment Claim

The Fifth Amendment right to counsel stems from the right to be free from self-incrimination. *See Miranda*, 384 U.S. at 470. In *Miranda*, the Supreme Court concluded that the Fifth Amendment requires police to inform suspects of their right to remain silent and right to have counsel present before any custodial interrogation. *Id.* at 479. A suspect may knowingly and intelligently waive those rights, but any request for counsel requires police to cease interrogation "until an attorney is present." *Id.* at 474-75. Once invoked and if not subsequently waived, the Fifth Amendment right to counsel remains in place during custody, and the police may not re-initiate interrogation without counsel present. *Edwards v. Arizona*, 451 U.S. 477, 483-85 (1981).

The Fifth Amendment protection defined in *Edwards*, however, is not unending. In *McNeil v. Wisconsin*, 501 U.S. 171 (1991), the Supreme Court suggested in dicta that a period between custodial interrogations could eliminate the need for the *Edwards* protection against the coercive nature of custodial interrogation:

> If the police do subsequently initiate an encounter in the absence of counsel **(assuming there has been no break in custody)**, the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial, even where the suspect executes a waiver and his statements would be considered voluntary under traditional standards.

501 U.S. at 177 (emphasis added). State and federal courts have consistently found that the Fifth Amendment right to counsel invoked during custodial interrogation ends when

custody ends.  *See*, *e.g.*, *McFadden v. Garraghty*, 820 F.2d 654, 661 (4th Cir. 1987); *United States v. Skinner*, 667 F.2d 1306, 1309 (9th Cir. 1982).

Given this Supreme Court dicta and consistent application by federal and state courts, the decision by the North Carolina Supreme Court, which specifically referred to these authorities, was not contrary to or an unreasonable application of clearly established federal law.  *See Warren*, 348 N.C. at 98, 499 S.E.2d at 440-41 (citing, *e.g.*, *McFadden*, 820 F.2d at 661; *Skinner*, 667 F.2d at 1309).  At the time of Mr. Warren's direct appeal, the North Carolina Supreme Court's decision was consistent with this clearly established rule that an invoked Fifth Amendment right to counsel stayed with a suspect only throughout the time he or she was in custody.  Following the May 29 interrogation, during which he invoked his right to counsel, Mr. Warren was out of custody for nearly six weeks between his release on June 7 and the July 20 interrogation during which he waived his right to counsel and then confessed to murdering Ms. Johnson.  *Id.* at 93-94, 499 S.E.2d at 437-38.  The state court's ruling that this break in custody meant that the *per se* rule in *Edwards* was inapplicable to an interrogation that occurred later was not unreasonable.  *See id.* at 97-98, 499 S.E.2d at 440-41.  Furthermore, since Mr. Warren's conviction, the Supreme Court has explicitly confirmed its dicta in *McNeil*, ruling that a fourteen-day break in custody was sufficient to end "the presumption of involuntariness established in *Edwards*."  *Maryland v. Shatzer*, 559 U.S. 98, 100, 110 (2010).

Mr. Warren, for the first time in this most recent round of briefing, questioned the voluntariness of his confession, asserting that police in Buncombe County violated his Fifth Amendment right to counsel by creating an unconstitutionally coercive and

suggestive interrogation environment.  Doc. 68 at 5-6.  Because he did not raise this issue

before the state courts, this Court cannot consider it.  *Cone v. Bell*, 556 U.S. 449, 465

(2009) (requiring that "habeas petitioners must exhaust available state remedies before

seeking relief in federal court").

## 2. The Sixth Amendment Claim

A defendant's Sixth Amendment right to counsel attaches upon initiation of

adversary judicial proceedings such as a formal charge, indictment, or preliminary

hearing.  *United States v. Gouveia*, 467 U.S. 180, 189-90 (1984); *Kirby v. Illinois*, 406

U.S. 682, 689 (1972).  That right, once invoked, protects a defendant during custodial

interrogation as well as during future adversary proceedings related to a specific charge.

*See Montejo v. Louisiana*, 556 U.S. 778, 794-795 (2009) (overruling *Michigan v.

Jackson*, 475 U.S. 625 (1986), but confirming that *Miranda* and *Edwards* protect a

suspect's Sixth Amendment right to counsel).  The right, however, is specific to the

offense charged and "cannot be invoked once for all future prosecutions."  *McNeil*, 501

U.S. at 175.  The Supreme Court has recognized that a defendant may make

incriminating statements about non-charged offenses during custodial interrogation and

has ruled that such statements, unrelated to the offense for which the Sixth Amendment

right to counsel has attached, "are, of course, admissible at a trial of those offenses."

*Maine v. Moulton*, 474 U.S. 159, 180 n.16 (1985).

The state court denied Mr. Warren's Sixth Amendment claim by concluding that

Mr. Warren had invoked his Sixth Amendment right to counsel solely for the

misdemeanor larceny charge related to the theft of Ms. Hurley's pocketbook.  *Warren*,

348 N.C. at 96, 499 S.E.2d at 439. When he was questioned on July 20 about Ms. Hurley's murder and Ms. Johnson's murder, he had been charged with neither crime. *See id.* at 93-94, 499 S.E.2d at 437-38 (indicating that he had only been charged with the misdemeanors). Therefore, the court held that any statements about the murders were not protected by his Sixth Amendment right to counsel and were admissible under his *Miranda* waiver. *Id.* at 95-96, 499 S.E.2d at 438-39.

The state court's ruling is neither contrary to, nor an unreasonable application of, clearly established federal law at the time of the ruling. Mr. Warren invoked his Sixth Amendment right to counsel for the larceny crime for which he had been formally charged. Any statements he made about the murder of Ms. Johnson were not protected by that offense-specific invocation. Furthermore, since Mr. Warren's conviction, the Supreme Court has strengthened its ruling about offense specificity, holding that *McNeil* "meant what it said" and declining to extend the protection to uncharged offenses, even those that are "factually related to a charged offense." *Texas v. Cobb*, 532 U.S. 162, 164, 168 (2001) (quotation omitted). Given that Ms. Johnson's murder was unrelated to the larceny charge, Mr. Warren's argument that his Sixth Amendment right to counsel covered his July 20 confession to Ms. Johnson's murder has no merit. The Court, therefore, denies Ground Two.

As for any claim Mr. Warren may be making about the effect of his statements on his Buncombe County conviction, this Court has no jurisdiction to address the constitutionality of that conviction and sentence.

E. Ground Three

In Ground Three, Mr. Warren asserts that the trial court violated his rights to due process by allowing the jury to consider as an aggravating factor that Mr. Warren "had been previously convicted of another capital felony."  N.C. Gen. Stat. § 15A-2000(e)(2). Mr. Warren asserts that he had not been convicted of any capital felonies at the time he murdered Ms. Johnson in 1990.  Doc. 4 at 17; Doc. 13 at 18-21.

At his trial, the court concluded that this aggravating factor potentially applied because Mr. Warren had been convicted of other capital felonies by the time he was tried for Ms. Johnson's murder.  Trial Tr. Vol. 7 at 1261-77, Doc. 53-10 at 111-27.  Over Mr. Warren's objection, the trial court instructed the jurors that if they found "beyond a reasonable doubt that the defendant had been convicted of first degree murder and that he killed the victim after he committed that first degree murder," they should find that the aggravating circumstance was present.[4]  Trial Tr. Vol. 9 at 1663, Doc. 53-12 at 132.

Mr. Warren raised this issue on direct appeal, where it was overruled.  The North Carolina Supreme Court held "that the 'previously convicted' language in N.C.G.S.

---

[4] The instruction in full was:

First degree murder is a capital felony.  A person has been previously convicted if he has been convicted and not merely charged, and if his conviction is based on conduct which occurred before the events out of which this murder arose.  If you find from the evidence beyond a reasonable doubt that the defendant had been convicted of first degree murder, and that he killed the victim after he committed that first degree murder, you would find this aggravating circumstance and would so indicate by having your foreman write "Yes" in the space provided after this aggravating circumstance on the Issues and Recommendation form.

Trial Tr. Vol. 9 at 1663, Doc. 53-12 at 132.

§ 15A–2000(e)(2) includes capital felonies '*conducted* prior to the events out of which the charge of murder arose, even when the *conviction* came after those events, provided the conviction occurs before the capital sentencing proceeding in which it is used as the basis of the' (e)(2) aggravating circumstance." *Warren*, 348 N.C. at 118, 499 S.E.2d at 452 (quoting *State v. Warren*, 347 N.C. 309, 320, 492 S.E.2d 609, 615 (1997)). Because the state supreme court denied this claim on the merits, this Court may only grant relief if the court's decision was contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts.

Mr. Warren asserts here that the state court decision was contrary to clearly established federal law because it amounted to a retroactive application of a new interpretation of a criminal statute, which the Supreme Court prohibited in *Bouie v. City of Columbia*, 378 U.S. 347 (1964). Doc. 13 at 20. In a supplemental brief, he notes that in *Metrish v. Lancaster*, 133 S. Ct. 1781 (2013), the Supreme Court recently held that retroactive application of a state court decision abolishing an affirmative defense did not violate due process and was not an unreasonable application of federal law. Doc. 83 at 3-4. Mr. Warren asserts that his case is more closely analogous to *Bouie* than to *Lancaster*, *id.* at 4, although neither directly addresses Mr. Warren's sentencing claim.

*Bouie* concerned prosecutions for trespass that arose out of a sit-in protest by two college students at a segregated lunch counter. *Bouie*, 378 U.S. at 348. To affirm the students' convictions, the South Carolina Supreme Court applied a new construction to its trespass statute. *Id.* at 362. The Court held that the decision denied the defendants the right to due process because a judicial construction may not "impose criminal penalties

21

for conduct committed at a time when it was not fairly stated to be criminal." *Id.* In

*Lancaster*, the Supreme Court declined to find a *Bouie* error when the state court

retroactively applied a judicial decision that "concerned an unambiguous statute that was

interpreted by the [Michigan] Supreme Court for the first time." *Lancaster*, 133 S. Ct. at

1791 (quotation omitted). In other words, the state judicial decision was not an

"unforeseeable and retroactive judicial expansion of narrow and precise statutory

language." *Id.* at 1787 (quoting *Bouie*, 378 U.S. at 352).

Here, Mr. Warren has not shown that the state court ruling he challenges rested on

"an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement." *Harrington*, 562 U.S. at 103. He asserts that the state court

decision was a retroactive application of a new interpretation of a criminal statute in part

because the state court cited to two cases that were decided after his conviction. *See* Doc.

13 at 19-20 (discussing *State v. Burke*, 343 N.C. 129, 469 S.E.2d 901 (1996) and *State v.

Lyons*, 343 N.C. 1, 468 S.E.2d 204 (1996)). Both of those cases concerned the similarly-

worded aggravating circumstance found at N.C. Gen. Stat. § 15A–2000(e)(3),[5] and both

cited to North Carolina cases, from before and after Mr. Warren's conviction, that

consistently reached the same result that Mr. Warren now challenges: that the "previously

convicted" language includes "felonies *conducted* prior to the events out of which the

charge of murder arose, even when the *conviction* came after those events." *Warren*, 348

---

[5] The (e)(3) aggravating circumstance applies if "[t]he defendant had been previously convicted of a felony involving the use or threat of violence to the person." N.C. Gen. Stat. § 15A–2000(e)(3).

N.C. at 118, 499 S.E.2d at 452 (quotation omitted); *see Burke*, 343 N.C. at 157-59, 469

S.E.2d at 915-16 (applying *State v. Goodman,* 298 N.C. 1, 257 S.E.2d 569 (1979)

("While this aggravating circumstance could not be submitted to the jury prior to a

conviction, there is no requirement that the conviction occur prior to the capital murder

so long as the conduct giving rise to the conviction occurred prior to the events out of

which the capital murder arose.")); *Lyons*, 343 N.C. at 22, 468 S.E.2d at 214 (same).  The

state supreme court here, therefore, acted very differently than the state supreme court in

*Bouie*, which "did not cite any of the cases in which it had previously construed the same

statute" and cited two other state cases that "were simply irrelevant." *Bouie*, 378 U.S. at

357.

Moreover, as the trial court observed in this case, Mr. Warren's preferred reading

of the statute would mean that the aggravating circumstance could only apply to a person

who had either escaped from prison or committed the second murder in prison.  Trial Tr.

Vol. 7 at 1271-72, Doc. 53-10 at 121-22.  It was not unreasonable for the state supreme

court to reject this strained reading in favor of one closer to the plain language of the

statute.  As the Supreme Court recently noted, "[t]his Court has never found a due

process violation in circumstances remotely resembling Lancaster's case—*i.e.*, where a

state supreme court, squarely addressing a particular issue for the first time, rejected a

consistent line of lower court decisions based on the supreme court's reasonable

interpretation of the language of a controlling statute." *Lancaster*, 133 S. Ct. at 1792.

The circumstances here are even less favorable to Mr. Warren, because the state supreme

court, in squarely addressing the (e)(2) aggravating factors for the first time, *affirmed* a

mostly consistent line of lower court and analogous North Carolina Supreme Court decisions.[6]  The judicial interpretation was neither "unexpected" nor "unforeseeable." *Bouie*, 378 U.S. at 354.

In short, Mr. Warren has not established that the North Carolina Supreme Court unreasonably applied clearly established federal law under AEDPA's "highly deferential" standard.  *Harrington*, 562 U.S. at 105.  He is not entitled to federal habeas relief on his due process claim.  The Court, therefore, denies Ground Three.

F.  Ground Four

In Ground Four, Mr. Warren maintains that the prosecution violated its obligations under *Brady* by not disclosing information related to the credibility of one of the State's witnesses and information relevant to mitigation.  Doc. 4 at 19-21.  Mr. Warren contends that the prosecution withheld a State Bureau of Investigation (SBI) report concerning a pretrial statement of witness Freddy Ferguson, who was with Mr. Warren and others on the night of Ms. Johnson's murder.  Doc. 13 at 21-22.  He asserts that the report revealed inconsistencies between Mr. Ferguson's trial testimony and his statement to law enforcement officers, specifically about the number and types of drinks that Mr. Warren had consumed on the night of the murder.  *Id.* at 22-23.  Mr. Warren's defense relied at

---

[6] In one case, *State v. Williams*, 339 N.C. 1, 46, 452 S.E.2d 245, 272 (1994), the North Carolina Supreme Court in dicta interpreted the (e)(3) circumstance as applying only where the prior felony conviction preceded the murder at issue.  Later, however, the North Carolina Supreme Court noted that it has "held on numerous occasions that the (e)(3) circumstance is properly submitted when the *conduct* upon which the prior conviction is based occurred prior to the murder at issue," and "disavow[ed] the language in *Williams* to the contrary."  *Warren*, 347 N.C. at 319, 320, 492 S.E.2d at 614, 615.  *Williams* does not support Mr. Warren's interpretation.

trial on the theory that his voluntary intoxication made him guilty of second-degree, not

first-degree, murder. *See* Trial Tr. Vol. 7 at 1234, Doc. 53-10 at 84.

The state MAR court rejected this claim on the merits, ruling that the information

contained in the SBI report was not favorable to Mr. Warren and that it would not have

created a reasonable probability of a different outcome. Doc. 70-2 at pp. 3-4. Therefore,

this Court must consider whether the state court's ruling was contrary to or an

unreasonable application of *Brady* and its progeny, or whether it was based on an

unreasonable determination of the facts.

*Brady* held "that the suppression by the prosecution of evidence favorable to an

accused upon request violates due process where the evidence is material either to guilt or

to punishment." 373 U.S. at 87. Favorable evidence includes evidence that could be

used to impeach a witness's credibility. *Giglio v. United States*, 405 U.S. 150, 154

(1972). Evidence is "material" under *Brady* "when there is a reasonable probability that,

had the evidence been disclosed, the result of the proceeding would have been different."

*Cone*, 556 U.S. at 469-70. Put another way, evidence must be disclosed when it "could

reasonably be taken to put the whole case in such a different light as to undermine

confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995).

The state court's ruling was not an unreasonable application of *Brady*, nor was it

based on an unreasonable determination of the facts. The SBI statement in question

showed that Mr. Ferguson told the officers that he saw Mr. Warren drinking on the night

in question, but he did not remember the amount or type of drinks Mr. Warren consumed.

*See* Doc. 70-2 at p. 3. At trial, Mr. Ferguson testified that he saw Mr. Warren drink only

beer and water at Applebee's. Trial Tr. Vol. 6 at 963-64, Doc. 53-9 at 19-20. The prosecution then played a tape of Mr. Warren's confession, in which he stated that he had been drinking both beer and mixed drinks, and defense counsel, on cross-examination of Detective J.L. Grubb, repeated Mr. Warren's description of the amount of alcohol he had consumed. *Id.* at 1143-46, Doc. 53-9 at 199-202. The jury also heard testimony that Mr. Warren and the rest of the group left Applebee's and spent time at Ms. Quinby's sister's house, as well as Ms. Quinby's house, before Mr. Warren and Ms. Johnson left for several hours. *Warren*, 348 N.C. at 92, 499 S.E.2d at 437.

Given the evidence presented about the amount of time that elapsed between the drinking at Applebee's and Ms. Johnson's murder and the fact that Mr. Warren repeatedly drove a motorcycle from place to place during that time, Mr. Warren cannot prove that the jury's rejection of his voluntary intoxication theory rested solely on the credibility of Mr. Ferguson. Regardless of whether defense counsel could have successfully impeached Mr. Ferguson with the fact that he was initially unable to remember the specific drinks consumed by Mr. Warren, Mr. Warren has not shown that such impeachment "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles*, 514 U.S. at 435. The state court's ruling that the withheld report was not material is not unreasonable.

Mr. Warren further alleges that the prosecution did not disclose a police report that would have had a significant impact on the jury's consideration of mitigating factors. Doc. 70 at 1-2. Mr. Warren gives no details in his argument about the specifics of this report but includes a transcript of the state MAR hearing. Doc. 70-1. According to Mr.

Warren's MAR counsel at the MAR evidentiary hearing, the prosecution withheld a police report showing that Mr. Warren made statements to the police that he had protected Ms. Quinby from her ex-husband, provided police information about the ex-husband's location, and drove Ms. Quinby to the magistrate's office after her ex-husband had accosted her. *Id.* at 18. Mr. Warren argued that those statements could have supported non-statutory mitigating factors and changed the outcome of his sentencing. *Id.* at 18-21. The state court concluded that such statements, having been made by Mr. Warren, were available to him, and therefore the state did not violate *Brady*. Doc. 70-2 at p. 4.

Mr. Warren has not provided any argument to support his assertion that the state court's decision about this so-called mitigation evidence was unreasonable. "Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing," let alone relief. *Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992), *abrog'n on other grounds recog'd by Yeatts v. Angelone*, 166 F.3d 255 (4th Cir. 1999). Here, Mr. Warren has come forward with no support for his allegation about the purported mitigating evidence. He has not produced evidence that his own statements were unavailable to him in any way and thus has not satisfied the first prong of *Brady*. For that matter, he has produced no evidence to show that these statements were material during his sentencing proceeding, also failing the second prong of *Brady*. The MAR court's determination that the prosecution did not violate *Brady* is therefore not unreasonable. The Court denies Ground Four.

G. Ground Five

In Ground Five, Mr. Warren asserts that the prosecution did not prove beyond a reasonable doubt the elements of premeditation and deliberation. According to Mr. Warren, there was no evidence of any statements by Mr. Warren indicative of an intent to kill, no evidence of threats or ill will, no lethal blows after the death of the victim, and no wounds other than the choking. Doc. 4 at 22. Mr. Warren also relies on his own statements to law enforcement officials indicating that he did not understand what he was doing or remember what happened when the crime occurred and that he had been drinking heavily the night of the crime. *Id.* On direct appeal, the North Carolina Supreme Court concluded "that there was sufficient evidence from which a rational jury could find that defendant killed Katherine Johnson with premeditation and deliberation." *Warren*, 348 N.C. at 102, 499 S.E.2d at 443.

Because the state court denied the claim on the merits, this Court must determine if that decision was based on an unreasonable determination of the facts or was contrary to, or an unreasonable application of, clearly established federal law.[7] Federal habeas

---

[7] Citing to a Sixth Circuit case, Mr. Warren asserts that the standard of review for Ground Five is *de novo*: "Because the state court only cited state cases, the question is not whether the state court's adjudication was unreasonable but whether the state court's ruling was an adjudication on the merits under Section 2254. AEDPA deference does not apply when, as here, the state court rules solely on state grounds." Doc. 73 at 3. The petitioner's position is not accurate. "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this [United States Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. "Avoiding these pitfalls does not require citation of [Supreme Court] cases—indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). Thus, the AEDPA deferential review standard applies even if a state court does not specifically cite federal law and does not apply

review of a claim challenging the constitutional sufficiency of the evidence supporting a conviction is limited to determining "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). To determine whether the state court reasonably applied this principle, the federal habeas court must determine whether the state court's decision is minimally consistent with the record, *Bell v. Jarvis*, 236 F.3d 149, 159 (4th Cir. 2000) (en banc), and must give deference to the findings of fact made by both the trial and appellate courts. 28 U.S.C. § 2254(e). The federal court does not weigh the evidence or consider the credibility of the witnesses. *United States v. Arrington*, 719 F.2d 701, 704 (4th Cir. 1983).

Considering the evidence in the light most favorable to the prosecution, a rational trier of fact had sufficient evidence on which to find premeditation and deliberation beyond a reasonable doubt. In North Carolina, premeditation and deliberation, or specific intent to kill, distinguishes murder in the first degree from murder in the second degree. *State v. Propst*, 274 N.C. 62, 71, 161 S.E.2d 560, 567 (1968). Proof of this element is essential for a conviction of first-degree murder, and the burden of proof beyond a reasonable doubt lies with the prosecution. *Id.* "Premeditation means that the

---

where the state court has not adjudicated the merits of a particular claim. *See Weeks v. Angelone*, 176 F.3d 249, 258 (4th Cir. 1999) (applying de novo review "[w]hen a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits").

act was thought out beforehand for some length of time, however short, but no particular amount of time is necessary for the mental process of premeditation." *State v. Conner*, 335 N.C. 618, 635, 440 S.E.2d 826, 835-36 (1994) (citation omitted). "Deliberation means an intent to kill, carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation." *Id.* at 635, 440 S.E.2d at 836 (citation omitted).

"An intent to kill is a mental attitude, and ordinarily it must be proved, if proven at all, by circumstantial evidence, that is, by proving facts from which the fact sought to be proven may be reasonably inferred." *State v. Alexander*, 337 N.C. 182, 188, 446 S.E.2d 83, 86-87 (1994) (quotation omitted). "The nature of the assault, the manner in which it was made, the weapon, if any, used, and the surrounding circumstances are all matters from which an intent to kill may be inferred." *Id.* at 188, 466 S.E.2d at 87 (quotation omitted). Moreover, an assailant "must be held to intend the normal and natural results of his deliberate act." *State v. Jones*, 18 N.C. App. 531, 534, 197 S.E.2d 268, 270 (1973).

It was undisputed at trial that Mr. Warren killed Ms. Johnson by strangulation; his defense was that the killing was done without premeditation and deliberation. Trial Tr. Vol. 7 at 1216-17, Doc. 53-10 at 66-67; *see* Trial Tr. Vol. 6 at 1123-26, Doc. 53-9 at 179-82.[8] The record contains ample evidence from which a rational jury could have inferred

---

[8] Mr. Warren moved to dismiss the charge of first-degree murder based on his position that the prosecution had not presented sufficient evidence of premeditation and deliberation; the trial court denied the motion. Trial Tr. Vol. 7 at 1154, Doc. 53-10 at 4. Mr. Warren's trial counsel then argued to the jury in closing that the State had not met its burden to produce evidence on

premeditation and deliberation.  The prosecution put on sixteen witnesses, including laypersons who had spent the day with Ms. Johnson and Mr. Warren, detectives, crime scene investigators, and a medical examiner qualified as an expert in forensic pathology. *See* Trial Tr. Vol. 6 at Index, 1115, Doc. 53-9 at 3, 171.  Witnesses testified that Mr. Warren said of the victim "that he would have her before the night was over" or would "have her by the end of the night," which rational jurors could have interpreted as indicative of ill will and premeditation.  *Id.* at 964, 993, Doc. 53-9 at 20, 49.  The medical examiner testified that the victim's cause of death was asphyxia due to strangulation and that it would take ten to fifteen seconds for a person being strangled with constant pressure by a ligature on the neck to lose consciousness, and three to four minutes of constant pressure for the victim to die.  *Id.* at 1124, 1126, Doc. 53-9 at 180, 182.  The prosecution presented evidence that, after the killing, Mr. Warren put Ms. Johnson's body in the trunk of her car, backed the car into a spot in a parking garage so that the license plate would not be visible, and left it there.  *Id.* at 1026-27, 1089, Doc. 53-9 at 82-83, 145.  Mr. Warren himself told police that he hid the body so that he would not go to jail.

---

premeditation and that the jury should not return a verdict of first-degree murder.  *Id.* at 1216-17, 1222-37, Doc. 53-10 at 66-67, 72-87.  The trial judge instructed the jury on the meaning of intent, premeditation, and deliberation.  *Id.* at 1244-47, Doc. 53-10 at 94-97.  The charge included the instruction that if the jury found that the prosecution had not proved premeditation and deliberation beyond a reasonable doubt, then they must return a verdict of not guilty to first-degree murder.  *Id.* at 1247, Doc. 53-10 at 97.  The jury also received instructions on second-degree murder: specifically, that premeditation, deliberation, and specific intent to kill are not necessary for a conviction of second-degree murder.  *Id.* at 1246, Doc. 53-10 at 96.  The jury returned a verdict of guilty to first-degree murder, *id.* at 1253, Doc. 53-10 at 103, which the North Carolina Supreme Court upheld on direct appeal.  *Warren*, 348 N.C. at 130, 499 S.E.2d at 459.

Trial Ex. 38 at 21, Doc. 67 at 22.  The morning after the killing, when Mr. Warren

appeared without Ms. Johnson at the home where they had been drinking with friends the

day before, he falsely told the others that she was at a motel and planning to return to

school in Chapel Hill that day.  Trial Tr. Vol. 6 at 967, 1053, Doc. 53-9 at 23, 109.  When

he was arrested on the South Carolina warrant, Mr. Warren possessed both a fraudulent

driver's license with his picture and Ms. Johnson's car keys, which he told detectives

belonged to him.  *Id.* at 1007-09, Doc. 53-9 at 63-65.

This evidence is more than sufficient to allow a jury to determine that Mr. Warren

acted with premeditation and deliberation.  As stated by the North Carolina Supreme

Court:

> [T]he State's evidence showed a lack of provocation by the victim, that
> defendant manually strangled Katherine Johnson to death, that he crammed
> her body into the car trunk, that he parked the car in a parking deck, and
> that he fabricated a story to conceal the murder.  These facts permit the
> inference that defendant acted with premeditation and deliberation, and the
> trial court properly denied defendant's motion to dismiss.

*Warren*, 348 N.C. at 103, 499 S.E.2d at 443.  It was not an unreasonable application of

or contrary to clearly established federal law for the state court to hold that a rational jury

could have concluded that Mr. Warren formed the intent to kill over the three- to four-

minute period he spent strangling the victim,[9] especially in light of his statements of ill

_____

[9] "[N]o particular amount of time is necessary for the mental process of premeditation."
*State v. Gladden*, 315 N.C. 398, 430, 340 S.E.2d 673, 693 (1986) (citation omitted); *see also*
*State v. Norman*, 331 N.C. 738, 741, 417 S.E.2d 233, 235 (1992) ("The deliberate strangling of a
person to death is some evidence that the strangler intended to kill.  The defendant denied such
an intent, but the jury did not have to believe this testimony.").

will made before the killing and his conduct indicating planning and rational thought undertaken to hide the killing.

Mr. Warren points to evidence that he was intoxicated at the time of the killing and otherwise did not premeditate or deliberate before the killing. First, evidence indicating a lack of premeditation and deliberation[10] as well as intoxication[11] does not mean there was legal error. It was the jury's role to sift through the testimony, determine credibility, and weigh the evidence. *See State v. Mash*, 323 N.C. 339, 346, 372 S.E.2d

---

[10] At trial, an Asheville police captain read a voluntary statement Mr. Warren made while in custody of the Asheville Police Department shortly after the murder. Trial Tr. Vol. 6 at 1082, 1090-91, Doc. 53-9 at 138, 146-47. In addition to confessing to the crime and to leaving Ms. Johnson's body in the trunk of her car, *id.* at 1095, Doc. 53-9 at 151, Mr. Warren expressed remorse, saying, "I didn't mean for it to [happen]," *id.* at 1097, Doc. 53-9 at 153. In a longer, taped voluntary statement, Mr. Warren said that he could not remember a number of things about the evening, such as whether he had disrobed Ms. Johnson, some of the details of the strangling, and how he came to wake up on the other side of the soccer field after the strangling occurred. *Id.* at 1147, Doc. 53-9 at 203; Trial Ex. 38 at 16-17, Doc. 67 at 17-18. Mr. Warren's attorney highlighted these memory lapses in his cross-examination of Detective Grubb, Trial Tr. Vol. 6 at 1146-47, Doc. 53-9 at 202-03, and in his closing remarks. Trial Tr. Vol. 7 at 1228-34, Doc. 53-10 at 78-84.

[11] Mr. Warren contends that he was too intoxicated to form the specific intent to kill required for first-degree murder. *See* Doc. 4 at 22. Jurors heard evidence concerning the amount of alcohol Mr. Warren drank before the killing. There was evidence that he drank heavily throughout the day and evening, including six or seven drinks at the Applebee's alone. Trial Tr. Vol. 6 at 973-74, 1099, 1145-46, Doc. 53-9 at 29-30, 155, 201-02; Trial Ex. 38 at 4-14, Doc. 67 at 5-15. There was other evidence that witnesses did not believe that Mr. Warren seemed intoxicated, Trial Tr. Vol. 6 at 983, 1051, Doc. 53-9 at 39, 107, that he at some point switched from beer to water, *id.* at 963-64, Doc. 53-9 at 19-20, that he appeared to be in control, *id.* at 970, Doc. 53-9 at 26, and that he was capable of driving a motorcycle at night. *Id.* at 969, 983, 994, Doc. 53-9 at 25, 39, 50. Testimony also demonstrated that witnesses had observed Mr. Warren on a previous occasion so intoxicated that he could barely walk. *Id.* at 972-73, 1053-54, Doc. 53-9 at 28-29, 109-10. This testimony was presumably offered to show that the witnesses had context to know how Mr. Warren looked and acted when intoxicated. The trial court gave a jury instruction on intoxication that "[i]f, as a result of intoxication, the defendant did not have the specific intent to kill the deceased formed after premeditation and deliberation, he is not guilty of first degree murder." Trial Tr. Vol. 7 at 1244-45, Doc. 53-10 at 94-95.

532, 537 (1988).  "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  *Jackson*, 443 U.S. at 326.  The evidence of Mr. Warren's guilt was sufficient, if believed, to prove his guilt beyond a reasonable doubt.

Mr. Warren also contends that premeditation cannot be proven in the absence of an explicit statement indicating intent to kill or evidence of threats, ill will, "lethal blows after the death of the victim," or wounds other than those resulting from the cause of death, here strangulation.  *See* Doc. 4 at 22.  Although the lack of such evidence bears on premeditation in North Carolina, it is not dispositive.[12]  *See State v. Taylor*, 337 N.C. 597, 607-08, 447 S.E.2d 360, 367 (1994).  North Carolina courts acknowledge that premeditation often must be proven by circumstantial evidence.  *Alexander*, 337 N.C. at 188, 446 S.E.2d at 86-87; *see also State v. Richardson*, 328 N.C. 505, 513, 402 S.E.2d 401, 406 (1991) ("The jury may infer premeditation and deliberation from the

---

[12] "Circumstances tending to prove that the killing was premeditated and deliberate include, *but are not limited to*:

> '(1) want of provocation on the part of the deceased; (2) the conduct and statements of the defendant before and after the killing; (3) threats and declarations of the defendant before and during the course of the occurrence giving rise to the death of the deceased; (4) ill-will or previous difficulty between the parties; (5) the dealing of lethal blows after the deceased has been felled and rendered helpless; and (6) evidence that the killing was done in a brutal manner.'"

*State v. Taylor*, 337 N.C. 597, 607, 447 S.E.2d 360, 367 (1994) (emphasis added) (quoting *Williams*, 308 N.C. at 69, 301 S.E.2d at 349).

circumstances of a killing, including that death was by strangulation."). Circumstantial evidence can include evidence of the accused's behavior from before, during, and after the commission of the crime. *Taylor*, 337 N.C. at 607, 447 S.E.2d at 367 (citing *Williams*, 308 N.C. at 69, 301 S.E.2d at 349). That evidence in Mr. Warren's case, as detailed *supra*, was substantial.

The North Carolina Supreme Court's conclusion that the State proved premeditation and deliberation beyond a reasonable doubt is neither contrary to or an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the record. *See Larry v. Branker*, 552 F.3d 356, 366-68 (4th Cir. 2009) (finding state court's conclusion that premeditation and deliberation existed was not unreasonable); *Bates v. Lee*, 308 F.3d 411, 418-20 (4th Cir. 2002) (same). The Court, therefore, denies Ground Five.

H. Ground Six

In Ground Six, Mr. Warren asserts that the prosecutor committed misconduct by making inflammatory and prejudicial remarks during his closing arguments at both phases of the trial. Doc. 4 at 13. Specifically, Mr. Warren contends that the prosecutor asserted that Mr. Warren came to High Point planning on killing someone, misstated the law about premeditation and deliberation, asked the jurors to put themselves in the place of the victim, and disparaged Mr. Warren by suggesting that he was a coward who lacked remorse. Trial Tr. Vol. 7 at 1186, 1188, 1204-05, 1211-12, 1213, Doc. 53-10 at 36, 38, 54-55, 61-62, 63. Mr. Warren alleges that these remarks were unconstitutionally prejudicial and deprived him of a fair trial. Doc. 13 at 28-29.

The North Carolina Supreme Court rejected this ground on the merits on direct appeal, making this claim subject to AEDPA's deferential review. The state court ruled that: (1) the prosecutor's statement about Mr. Warren's intention to commit murder was not improper because it was a reasonable inference based upon the evidence; (2) the prosecutor's statement about the law of premeditation and deliberation was an accurate statement of the law; (3) the prosecutor's statement asking the jurors to consider what the victim felt during the murder was supported by the evidence and allowed by state law; and (4) any comments about Mr. Warren and his lack of remorse were reasonable inferences drawn from the evidence. *Warren*, 348 N.C. at 108-10, 499 S.E.2d at 446-47.

It is well established that a prosecuting attorney must act within "the bounds of . . . propriety and fairness." *Berger v. United States*, 295 U.S. 78, 84 (1935). In exercise of that duty, a prosecutor may not make "improper insinuations and assertions calculated to mislead the jury." *Id.* at 85. Nonetheless, the Supreme Court has made clear that a prosecutor's improper remarks violate the Constitution only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). The prosecutor's argument must therefore be found (1) improper and (2) so prejudicial as to deny a defendant a fair trial. *United States v. Lighty*, 616 F.3d 321, 359 (4th Cir. 2010).[13] "Courts must conduct a fact-specific inquiry and examine the

---

[13] The Fourth Circuit considers several factors to determine prejudice in the second prong of the test:

challenged comments in the context of the whole record." *Bennett v. Stirling*, 842 F.3d 319, 323 (4th Cir. 2016) (citing *United States v. Young*, 470 U.S. 1, 11-12 (1985)).

Mr. Warren has not shown that the prosecutor's remarks were improper or calculated to mislead or inflame the jury, much less that they deprived him of a fair trial.[14]  During the trial, the jury heard evidence that Mr. Warren checked into a hotel in High Point under a false name and address and that Mr. Warren had a driver's license with that false name and a different address.  Trial Tr. Vol. 6 at 1067-69, Doc. 53-9 at 123-25.  Two witnesses testified that Mr. Warren said that he intended to "have [Ms. Johnson] before the night was over" or "have [Ms. Johnson] by the end of the night." *Id.* at 964, 993, Doc. 53-9 at 20, 49.  Given this evidence, the state court's ruling that the prosecutor's statement about Mr. Warren's intent when he came to High Point was a reasonable inference based on the evidence and was not contrary to or an unreasonable application of federal law.

---

(1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; . . . (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters[;] . . . (5) whether the prosecutor's remarks were invited by improper conduct of defense counsel[;] and (6) whether curative instructions were given to the jury.

*Lighty*, 616 F.3d at 361 (citations and quotation marks omitted).

[14] Mr. Warren contends that this Court should review this ground *de novo* because the state court relied only on state law in denying relief.  Doc. 13 at 29.  Again, this position is not accurate.  *See supra* note 7 at pp. 28-29.

The prosecutor's statement of the law on premeditation and deliberation was likewise not improper. Mr. Warren complains that the prosecutor misstated the law when he said that "if you find that he had the intent to kill at any time prior to that five or six minutes [before placing the ligature around her neck], then he killed her, first degree murder, period, open and shut, said and done." Trial Tr. Vol. 7 at 1204, Doc. 53-10 at 54; *see* Doc. 4 at 24 (contending that the prosecutor misstated the law on premeditation and deliberation). North Carolina law states that premeditation requires a defendant to contemplate killing for some period, no matter how short, before acting to kill. *State v. Graves*, 343 N.C. 274, 278, 470 S.E.2d 12, 15 (1996) (citation omitted). Deliberation requires the intent to kill and carrying out "that intent in a cool state of blood, free from any violent passion suddenly aroused by some lawful or just cause or legal provocation." *Id.* (quotations omitted). Considering the evidence presented about Mr. Warren's pursuit of Ms. Johnson and the act of strangling her, *see supra* Section III.G, the prosecutor's argument was a reasonable inference based on the evidence and was not an incorrect statement of North Carolina law.

The prosecutor's invocation of the victim's feelings and statements concerning Mr. Warren's character were likewise proper under state law and supported by the evidence. During argument, the trial court sustained an objection when the prosecutor asked the jury to "imagine being there" during the strangulation and issued a cautionary instruction to disregard that statement. Trial Tr. Vol. 7 at 1211-12, Doc. 53-10 at 61-62. The prosecutor then asked the jury to imagine how Ms. Johnson felt while she was being strangled, which was allowed over an objection. *Id.* at 1212, Doc. 53-10 at 62. North

Carolina law prohibits an argument that asks the jurors to put themselves in the place of the victims, *State v. McCollum*, 334 N.C. 208, 224, 433 S.E.2d 144, 152 (1993) (citation omitted), but allows a prosecutor to ask the jury to imagine the emotions of a victim. *State v. Bond*, 345 N.C. 1, 38, 478 S.E.2d 163, 183 (1996) (citations omitted). When the prosecutor asked the jury to imagine the emotions of Ms. Johnson, he was not misstating evidence or misleading the jury, nor was he in violation of North Carolina law.

The prosecutor's argument about Mr. Warren's lack of remorse consisted of a statement that Mr. Warren was "not your average killer," "a homicidal person," and did not care about the murder or the victim. Trial Tr. Vol. 7 at 1213, Doc. 53-10 at 63. When faced with pages of testimony about Mr. Warren's selection of Ms. Johnson as a victim, his actions in strangling her with her own bra, and his later hiding of the body, the state court's determination that these statements were reasonable inferences based on the evidence was not unreasonable and was well supported by the evidence.

The cases that Mr. Warren cites in support of his argument that the prosecutor made improper statements are distinguishable. *See generally* Doc. 70 at 4-5. In *United States v. Ayala-García*, 574 F.3d 5, 17-22 (1st Cir. 2009), the government conceded that the prosecutor's remark that "[t]hirty-one potential lives were saved" was improper and supported an improper inference that the defendants were potential mass murderers. The First Circuit found that these improper remarks "so poisoned the well that the trial's outcome was likely affected." *Id.* at 22 (quotation omitted). In Mr. Warren's case, the state court reasonably ruled that all of the prosecutor's remarks were not improper because they were reasonable inferences based on the evidence presented. *See Warren*,

348 N.C. at 108, 499 S.E.2d at 446. The Fourth Circuit case on which Mr. Warren relies, *Lighty*, rejected the appellant's claim of improper argument and set out the two-pronged test for assessing such claims: that the arguments must be (1) improper and (2) so prejudicial as to deny the defendant due process. *Lighty*, 616 F.3d at 359-62. Even if Mr. Warren had made a credible argument that the state court unreasonably found that the prosecutor's statements were not improper, he has not shown, in light of the overwhelming evidence of his guilt and his actions in seeking out Ms. Johnson, covering up the crime, and murdering two other women, that those remarks were so prejudicial as to deny him due process during his sentencing hearing.

The state court concluded that the prosecutor did not misstate the evidence or the law or make improper insinuations during closing argument. *See Warren*, 348 N.C. at 109-10; 499 S.E.2d at 447. The Supreme Court has cautioned that "a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury . . . will draw that meaning from the plethora of less damaging interpretations." *Donnelly*, 416 U.S. at 647. Given the evidence presented at trial, the state court's determination that the prosecutor's closing argument was not improper is not an unreasonable application of clearly established federal law and does not rely on an unreasonable determination of the facts. Therefore, the Court denies Ground Six.

I. Ground Seven

In Ground Seven, Mr. Warren contends that the admission of post-mortem photographs of Ms. Johnson violated his Eighth and Fourteenth Amendment rights. The State responds that Mr. Warren has not exhausted this claim. Doc. 8 at 1. Even if Mr.

Warren has exhausted this claim, he has not shown that the state court's conclusion was contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts.

At trial, Mr. Warren objected to the introduction of "gory and gruesome" photographs of Ms. Johnson at both the guilt and sentencing phases, contending that the photographs were not relevant and that their probative value was outweighed by their unfairly prejudicial effect. Doc. 4 at 26; Trial Tr. Vol. 4 at 812-28, Doc. 53-7 at 195-211; Trial Tr. Vol. 6 at 1029, 1120-21, Doc. 53-9 at 85, 176-77; *see also* Trial Tr. Vol. 8 at 1324, 1352, Doc. 53-11 at 42, 70 (objecting to photos of the South Carolina victim and Ms. Hurley). On direct appeal, he asserted that the photographs were admitted in violation of state evidence rules and, without citation to federal case law, that their admission violated his Eighth and Fourteenth Amendment rights. *See* Def. Appellant's Br., *State v. Warren*, No. 116A96, Doc. 82-4 at 77-79 (N.C. Mar. 20, 1997). The North Carolina Supreme Court determined that the photographs were relevant and probative and that their admission was not an abuse of discretion. *Warren*, 348 N.C. at 111, 499 S.E.2d at 448.

Citing to cases from the Fifth and Eleventh Circuits, the State asserts that Mr. Warren's "generic[] reference[]" to his Eighth and Fourteenth Amendment rights on direct appeal was not sufficient to present fairly, and thus exhaust, this claim. Doc. 78 at 6. For a claim to have been fairly presented, the state court must "be alerted to the fact that the prisoners are asserting claims under the United States Constitution." *Duncan v. Henry*, 513 U.S. 364, 365-66, (1995) (per curiam). A defendant generally need do little

to present a federal claim: "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *Jones v. Sussex I State Prison*, 591 F.3d 707, 713 (4th Cir. 2010). Here, although the bulk of Mr. Warren's argument and all of the cases he cited on direct appeal pertained to state evidentiary law, he specifically asserted that the state court's evidentiary rulings violated his rights under the Eighth and Fourteenth Amendments. Def. Appellant's Br., *Warren*, No. 116A96, Doc. 82-4 at 77, 79. These explicit references to the United States Constitution were more than "[o]blique references which hint that a theory may be lurking in the woodwork." *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000) (quoting *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997)).[15]

Mr. Warren contends that because his attorney conceded his guilt to second-degree murder in closing arguments, the only issue for the jury was whether the State had proven premeditation, deliberation, and specific intent to kill. Doc. 4 at 26. Mr. Warren asserts that the photographs did not have any tendency to make the existence of premeditation

---

[15] The North Carolina Supreme Court did not specifically rule on Mr. Warren's Eighth or Fourteenth Amendment arguments. *See Warren*, 348 N.C. at 111, 499 S.E.2d at 448. However, *Harrington* establishes the presumption that "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 562 U.S. at 99.

more or less probable and served only to inflame jurors' passions. *Id.* Therefore, he

contends, the prosecutor's use of the photographs violated his constitutional rights.

To the extent Mr. Warren contends that the North Carolina courts misapplied their

own evidence rules, such a claim is not a basis for habeas relief. *Marshall v. Lonberger*,

459 U.S. 422, 438 n.6 (1983) ("[T]he Due Process Clause does not permit the federal

courts to engage in a finely-tuned review of the wisdom of state evidentiary rules."). The

balancing of relevance and prejudice is generally a state evidentiary issue. *See, e.g.*,

*Lisenba v. California*, 314 U.S. 219, 227 (1941) ("The Fourteenth Amendment does not

forbid a state court to construe and apply its [evidentiary] laws."). In North Carolina,

"[w]hether photographic evidence is admissible is within the sound discretion of the trial

court." *State v. Wynne*, 329 N.C. 507, 516, 406 S.E.2d 812, 816 (1991).

Mr. Warren has not shown that the state supreme court decision was contrary to,

or an unreasonable application of, clearly established federal law or based on an

unreasonable determination of the facts. He identifies no case in which the Supreme

Court has found a violation of the Eighth or Fourteenth Amendments based on the

admission of photographs of the murder victim. *See* Doc. 4 at 26 (citing only *Payne v.

Tennessee*, 501 U.S. 808 (1991) and *Darden*, 477 U.S. 168). He points out no place

during the trial when the State made improper use of the photographs. *See* Doc 4 at 26.

Although he asserts that the photographs "did not have any tendency to make the

existence of premeditation, deliberation or a specific intent to kill more or less probable

than they would have been without the introduction of the photographs," *id.*, he does not

dispute or even address the trial court's finding that the photographs illustrated relevant

testimony by witnesses about the state of the victim's body and the cause of death.  *See Warren*, 348 N.C. at 111, 499 S.E.2d at 448.  He does not dispute that strangulation is evidence of intent to kill.  Nor does he explain why the court was incorrect.  *See* Trial Tr. Vol. 4 at 820-21, Doc. 53-7 at 203-04; *see also Gladden*, 315 N.C. at 431, 340 S.E.2d at 693 (noting the nature of the victim's wounds can create an inference of premeditation and deliberation).  Moreover, the record shows that the trial judge reviewed each proffered photograph, admitted only those that were relevant to some aspect of the State's case, and took considerable care to ensure that each photograph depicted something that the others did not so as to minimize repetition of the difficult images.  *See* Trial Tr. Vol. 4 at 821-23, 826-27, Doc. 53-7 at 204-06, 209-10.

Mr. Warren cites two cases to support his contention that admission of the photographs violated his constitutional rights.[16]  Neither case held that state courts' admission of graphic photos in a murder case was contrary to clearly established federal law.  In *Payne*, the Court held that a jury may hear victim-impact evidence at the sentencing phase of a trial.  501 U.S. at 827.  *Darden*, which Mr. Warren cites for the proposition that "certain acts so infect the trial with unfairness as to make the resulting conviction a denial of due process," Doc. 4 at 26, addresses three issues, none of which relate to photographic evidence or to probative and prejudicial balancing.  477 U.S. at 170.  Neither case supports Mr. Warren's contentions.

---

[16] Mr. Warren cited both cases in his original petition.  Doc. 4 at 26.  He did not address this ground in his brief associated with the State's motion to deny certain claims, *see* Doc. 13, nor did he provide any new legal authority supporting this claim.  *See* Doc. 70.

In a criminal case, due process is violated when a state's procedures "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Medina v. California,* 505 U.S. 437, 446 (1992) (quoting *Patterson v. New York*, 432 U.S. 197, 202 (1977)); *Billotti v. Legursky*, 975 F.2d 113, 115 (4th Cir. 1992).[17] The admission of these seven post-mortem photographs did not "so infuse[] the trial with unfairness as to deny due process of law." *Estelle v. McGuire*, 502 U.S. 62, 75 (1991) (quoting *Lisenba*, 314 U.S. at 228).

Accordingly, the state court's decision to reject this clam was neither contrary to nor an unreasonable application of clearly established federal law. Nor was it based on an unreasonable determination of the facts in light of the record. The Court, therefore, denies Ground Seven.

J. <u>Ground Eight</u>

In Ground Eight, Mr. Warren objects to the instruction given to the jury that flight could be considered to show consciousness of guilt. He maintains that the probative value of evidence that an accused fled the scene of a crime is low in any case and that in this case, where the issue for trial was premeditation, the issue of flight was not probative at all. Doc. 4 at 28. He relies on *Wong Sun v. United States*, 371 U.S. 471 (1963), and *Alberty v. United States*, 162 U.S. 499 (1896), for the proposition that "[t]he United States Supreme Court has consistently doubted the probative value in criminal trials of

---

[17] Mr. Warren has not cited any cases or made any argument to support his claim that his Eighth Amendment rights were violated. *See* Docs. 4, 13, 70.

evidence that the accused fled the scene of an actual or supposed crime." Doc. 4 at 28. For that reason, Mr. Warren asserts that the flight instruction violated his right to due process in a case where he maintains that the only issue for the jury was premeditation.

Although Mr. Warren did not object when the trial judge gave an instruction on flight to the jury,[18] he raised this issue on direct appeal. *See Warren*, 348 N.C. at 112, 499 S.E.2d at 448-49. He contended there, as here, that the jury should not have been instructed on flight because he conceded guilt to second-degree murder, and flight has "no bearing" on premeditation and deliberation. *Id.* at 112, 499 S.E.2d at 449. He also contended that the flight instruction otherwise violated his constitutional rights. *Id.* On plain error review, the North Carolina Supreme Court found no error. *Id.* The court noted that Mr. Warren "did not plead guilty to second-degree murder, but merely consented to concede guilt for that offense in argument to the jury; thus, the State was still required to prove each element of the charged offense." *Id.*

Because the state court adjudicated this claim on the merits, this Court may not grant relief unless the ruling was contrary to, or an unreasonable application of, clearly

---

[18] The trial court's instruction in full was:

> Now, the State contends that the defendant fled, and evidence of flight may be considered by you, together with all the other facts and circumstances in this case, in determining whether the combined circumstances amount to an admission or show a consciousness of guilt. However, proof of this circumstances [sic] is not sufficient in itself to establish the defendant's guilt. Further, this circumstance has no bearing on the question of whether the defendant acted with premeditation and deliberation. Therefore, it is not to be considered by you as evidence of premeditation or deliberation.

Trial Tr. Vol. 7 at 1246, Doc. 53-10 at 96.

established federal law or based on an unreasonable determination of the facts. Mr.

Warren has cited no case, much less a United States Supreme Court case, holding that an

instruction on flight violates due process, either generally or specifically when a

defendant does not contest his guilt to second-degree murder. Although the Court noted

in a footnote in *Wong Sun* that "we have consistently doubted the probative value in

criminal trials of evidence that the accused fled the scene of an actual or supposed

crime," 371 U.S. at 483 n.10, it did not hold such evidence inadmissible or hold that an

instruction allowing a jury to consider the defendant's flight is unconstitutional. North

Carolina's law related to jury instructions on flight is well established. *See, e.g.*, *Warren*,

348 N.C. at 112, 499 S.E.2d at 449 (collecting cases). Mr. Warren has identified no

reason for the North Carolina Supreme Court to think this body of law was

unconstitutional or contrary to clearly established federal law.

In a supplemental brief, Mr. Warren asserts that the court's instruction was

particularly prejudicial because the trial judge did not take precautionary steps suggested

by the District of Columbia Court of Appeals to ensure that the prejudicial effect of the

instruction did not outweigh its probative value. Doc. 57 at 6-7 (discussing *Headspeth v.*

*United States*, 86 A.3d 559 (D.C. 2014)). According to the petitioner, those steps include

"fully appris[ing] the jury that a flight may be prompted by a variety of motives and thus

the jury should use caution before making an inference of guilt from the fact of flight."

*Id.* at 7. A decision by the D.C. Court of Appeals does not affect this Court's analysis of

whether the North Carolina Supreme Court decision was an unreasonable application of

clearly established United States Supreme Court precedent. *See Williams*, 529 U.S. at 412-13.

In any event, the trial judge here gave a similar cautionary instruction, telling the jury that evidence of flight "is not sufficient in itself to establish the defendant's guilt" and may be considered "together with all the other facts and circumstances . . . in determining whether the combined circumstances amount to an admission or show a consciousness of guilt." Trial Tr. Vol. 7 at 1246, Doc. 53-10 at 96. He also instructed that evidence of flight "has no bearing" on premeditation and deliberation and "is not to be considered by you as evidence of premeditation or deliberation." *Id.* Moreover, this case is different from *Wong Sun,* where the Court held that a suspect's flight from an officer did not support an inference of guilty knowledge when the officer did not disclose that he was a member of law enforcement and affirmatively misrepresented his reason for being on the premises by holding himself out as a dry cleaning customer. *Wong Sun*, 371 U.S. at 482-83. Here, there was substantial evidence to support the flight instruction, including evidence of numerous active steps Mr. Warren took after fleeing to avoid apprehension.

In his briefs of later authority, *see* Doc. 57 at 7, Doc. 73 at 3, Mr. Warren raises for the first time a contention that the flight instruction should not have been given because it was not supported by the evidence. To the extent he can raise this unexhausted argument here,[19] it has no merit. There was substantial evidence that Mr. Warren not only left the

---

[19] He did not raise this argument in his original MAR; although he did contend in his MAR that counsel was ineffective for not objecting to a flight instruction, *see* Pet'r's MAR, *State v.*

scene of the crime, but also took steps to avoid apprehension. *See State v. Thompson*, 328 N.C. 477, 490, 402 S.E.2d 386, 392 (1991) (noting that under North Carolina law a flight instruction is not appropriate based merely on "evidence that defendant left the scene of the crime" and is only appropriate if there is also "evidence that defendant took steps to avoid apprehension").[20] After the killing, Mr. Warren collected Ms. Johnson's body and clothing, put them in the trunk of her car, left the crime scene, drove her car to the Radisson Hotel parking garage, and backed the car into a spot so its tags could not be seen. Trial Ex. 38 at 20-21, Doc. 67 at 21-22; Trial Tr. Vol. 6 at 1027, Doc. 53-9 at 83. He later told authorities he had done this because he did not want to go to jail for murder. Trial Ex. 38 at 21-22, Doc. 67 at 22-23. He falsely told detectives that Ms. Johnson's car keys belonged to him. Trial Tr. Vol. 6 at 1008-09, Doc. 53-9 at 64-65. Additionally, he was staying at a different hotel under a false name. *Id.* at 1067-68, Doc. 53-9 at 123-24.

Mr. Warren contends that the evidence of flight in his case was unclear, Doc. 57 at 7, but the fact that evidence of flight might have an innocent explanation or that other evidence indicates a defendant did not flee does not mean that a jury instruction on flight is improper. *State v. Lampkins*, 283 N.C. 520, 523-25, 196 S.E.2d 697, 698-99 (1973)

---

*Warren*, No. 90 CRS 20090, Doc. 82-3 at 35-38 (N.C. Super. Ct. July 12, 1999), nor did he raise this argument before the North Carolina Supreme Court. *See Warren*, 348 N.C. at 112, 499 S.E.2d at 449 (noting that the "defendant does not contest the existence of flight in this case").

[20] Under North Carolina law, "[s]o long as there is some evidence in the record reasonably supporting the theory that defendant fled after commission of the crime charged, the instruction is properly given. The fact that there may be other reasonable explanations for defendant's conduct does not render the instruction improper." *State v. Irick*, 291 N.C. 480, 494, 231 S.E.2d 833, 842 (1977) (citation omitted).

("An accused may explain admitted evidence of flight by showing other reasons for his departure or that there, in fact, had been no departure."). "[T]he degree or nature of the flight is of great importance to the jury in weighing its probative force. . . . Flight is 'relative' proof which must be viewed in its entire context to be of aid to the jury in the resolution of the case." *State v. Jones*, 292 N.C. 513, 527, 234 S.E.2d 555, 562-63 (1977) (citations omitted).

In Mr. Warren's case, the jury instruction was consistent with North Carolina law, and there was sufficient evidence of flight to support the instruction. The state court's conclusion that the flight instruction was properly given, therefore, is neither contrary to, nor an unreasonable application of, clearly established federal law, and it is not based on an unreasonable determination of the facts in light of the record. The Court denies Ground Eight.

K. <u>Ground Nine</u>

In Ground Nine, Mr. Warren contends that his trial counsel were constitutionally ineffective because they did not object to the prosecution's use of leading questions. Mr. Warren asserts that the district attorney's questioning method was more akin to testimony than proper direct questioning and that his counsel's failure to object deprived him of a fair trial. Doc. 4 at 30. Mr. Warren first presented this claim to the state MAR court, which determined it to be procedurally barred under N.C. Gen. Stat. § 15A-1419(a)(3) because Mr. Warren did not raise the claim on direct appeal. *State v. Warren*, No. 90 CRS 20090, Doc. 82-2 at p. 4 (N.C. Super. Ct. Sept. 26, 2002) (amended final order

denying MAR). Because Ground Nine fails on its merits, this Court need not address the issue of procedural bar. *See* discussion *supra* Section III.B at pp. 11-14.

In order to prove ineffective assistance of counsel, a petitioner must establish, first, that his or her attorney's performance fell below a reasonable standard for defense attorneys and, second, that he or she was prejudiced by that performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (*adopted in North Carolina by State v. Braswell*, 312 N.C. 553, 561-63, 324 S.E.2d 241, 248 (1985)). As to the first prong, the petitioner bears the burden of affirmatively showing deficient performance. *See Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994). An analysis of counsel's performance begins with the presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. To overcome that presumption and establish deficient performance, the "defendant must show that counsel failed to act 'reasonbl[y] considering all the circumstances.'" *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 688). As to the second prong, to establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A court is not required to "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

North Carolina defines a leading question as "one which suggests the answer desired and is a question which may often be answered by yes or no." *State v. Greene*, 285 N.C. 482, 492, 206 S.E.2d 229, 235 (1974) (citation omitted). "[I]t is firmly

entrenched in the law of [North Carolina] that it is within the sound discretion of the trial judge to determine whether counsel shall be permitted to ask leading questions."[21]  *Id.* On appellate review, North Carolina courts review the allowance of leading questions on direct examination for abuse of that discretion.  *Id.*

Mr. Warren cites several examples of what he considers to be the prosecution's leading questions to support his claim.  Doc. 13-5 at 11.  Many of Mr. Warren's citations, however, do not include leading questions as understood in North Carolina law.  For example, Mr. Warren refers to these exchanges:

> Q.      All right.  Tell the members of the jury how you saw Katherine
>            Johnson for the last time.
> A.      I seen her riding by Phillips . . . .
> Q.      What did you do after seeing them ride by?
> A.      I retired to bed.
> Q.      Was that the last time you saw Katherine Johnson alive?
> A.      Yes.

Trial Tr. Vol. 6 at 966: 3-10, Doc. 53-9 at 22;

> Q.      What time did you leave Terri Quinby's house that Monday, sir, if
>            you remember?
> A.      That Monday, I left the house probably around seven o'clock.  No,
>            that would not be right.
> Q.      Was it later on, sometime late that afternoon?

---

[21] "The trial judge in ruling on leading questions is aided by certain guidelines which have evolved over the years to the effect that counsel should be allowed to lead his witness on direct examination when the witness is: (1) hostile or unwilling to testify, (2) has difficulty in understanding the question because of immaturity, age, infirmity or ignorance or where (3) the inquiry is into a subject of delicate nature such as sexual matters, (4) the witness is called to contradict the testimony of prior witnesses, (5) the examiner seeks to aid the witness' recollection or refresh his memory when the witness has exhausted his memory without stating the particular matters required, (6) the questions are asked for securing preliminary or introductory testimony, (7) the examiner directs attention to the subject matter at hand without suggesting answers and (8) the mode of questioning is best calculated to elicit the truth." *Greene*, 285 N.C. at 492-93, 206 S.E.2d at 236 (citations omitted).

> A. I'm not really certain on that.
> Q. Okay.

*Id.* at 967: 17-23, Doc. 53-9 at 23; and

> Q. Did you have information that it belonged to this defendant, Lesley Warren?
> A. Yes, or that he was riding that particular motorcycle.

*Id.* at 1006: 5-7, Doc. 53-9 at 62. Although these questions call for yes-or-no answers, they are not classically leading because they do not suggest the answer in the question. They leave the answer of the question up to the witness, as shown by the second example. Mr. Warren cannot demonstrate a reasonable probability that the trial court, in its discretion, would have sustained objections to these types of questions.

Mr. Warren cites other examples that include actual leading questions, but those questions were used simply to move along testimony or refresh a witness's memory:

> Q. Did he mention which hotel he left her at?
> A. Yes, but I can't remember the name of it.
> Q. Did he mention the Town House motel?
> A. Yes.

*Id.* at 967: 13-16, Doc. 53-9 at 23;

> Q. Where did you go from there?
> A. I went to the grocery store.
> Q. And was that to buy provisions for the meal later on that evening?
> A. Yes, sir.

*Id.* at 981: 6-10, Doc. 53-9 at 37; and

> Q. And do you remember what day of the week or date that was you [sic] went to that location?
> A. I believe that was a Friday.
> Q. And that was the Friday after the Sunday we've been talking about here; is that right?
> A. Yes.

*Id.* at 1005: 3-8, Doc. 53-9 at 61.  The decision by Mr. Warren's trial counsel not to object to these leading questions, which did not elicit damaging testimony but simply provided context for witness testimony, was not an example of deficient performance.

Even assuming, *arguendo*, that a case could be made that counsel's performance was deficient, Mr. Warren cannot show a reasonable probability that the outcome would have been changed had counsel objected.  It would not have been an abuse of discretion for the trial court to allow this type of questioning, which was used primarily to aid the witnesses in setting the scene for their testimony.

Mr. Warren's examples include another type of permissible leading question: those designed to "secur[e] preliminary or introductory testimony."  *Greene*, 285 N.C. at 492, 206 S.E.2d at 236.  In many of these examples, the prosecution asked leading questions in order to lay a foundation for the introduction of exhibits:

> Q.    Let me show you two items that I have marked for identification as State's Exhibits 5 and 6.  I'll ask you to look at these two pictures and see if they illustrate and depict the residence there on Phillips Avenue?
> A.    Yes.

Trial Tr. Vol. 6 at 968: 1-5, Doc. 53-9 at 24; and

> Q.    . . . Detective, would you look at State's Exhibit Number 3?
> A.    Yes.
> Q.    Is that the set of keys that fell out of Mr. Warren's jeans pockets?
> A.    They're the same type of keys that fell out of Mr. Warren's pocket. Appear to be the same keys.

*Id.* at 1008: 13-19, Doc. 53-9 at 64.  The lack of objection to these types of permissible questions is not deficient performance under *Strickland*, especially in the absence of a showing that any prejudice resulted.

Although there are other questions to which Mr. Warren objects that are closer to the line of being leading, particularly during the testimony of law-enforcement officers, none of those questions appear to have been about anything in dispute, and the questions again appear designed to move through undisputed matters quickly and to provide context for other testimony. Such examples include:

> Q.   Detective Grubb, I think that the matter became a homicide sometime later on toward Friday or Saturday of that week; is that correct?
> A.   Yes, sir.

*Id.* at 1004: 20-23, Doc. 53-9 at 60;

> Q.   And I believe one of the other officers made a phone call to Ms. Quinby's residence, did they?
> A.   Lieutenant Nunn, my supervisor, made a call to Ms. Quinby's residence and asked her to step outside onto the porch, and she and Mr. Warren came to the door.

*Id.* at 1006: 11-15, Doc. 53-9 at 62;

> Q.   And when Mr. Warren came to the door, did you at that time take him into custody?
> A.   Detective McNeil and I both took him into custody; yes, sir.
> Q.   Did you transport him to the High Point Police Department?
> A.   Yes, sir, we did.

*Id.* at 1006: 11-21, Doc. 53-9 at 62; and

> Q.   Did it say that her body would be in the trunk of that car?
> A.   Yes, it did.
> Q.   Was the investigation at that time, after you contacted Mr. Nunn, was that turned over, and did Detective Grubb and Detective McNeil and Detective Soban proceed with the investigation there?
> A.   Yes, they did. We sealed off the parking deck to the public, and they were contacted.

*Id.* at 1022: 3-11, Doc. 53-9 at 78.

Mr. Warren has offered no evidence that failure to object to these questions fell below the level of competent representation, and "it is well established that failure to object to inadmissible or objectionable material for tactical reasons can constitute objectively reasonable trial strategy under *Strickland*." *Humphries v. Ozmint*, 397 F.3d 206, 234 (4th Cir. 2005) (en banc) (citing *Booth-El v. Nuth,* 288 F.3d 571, 584 (4th Cir. 2002) (counsel's failure to object to objectionable jury panel that may have been favorable for other reasons was not objectively unreasonable) ("Defense counsel made a tactical decision to preserve the jury that had already been selected."); *Spicer v. Roxbury Corr. Inst.,* 194 F.3d 547, 562 (4th Cir. 1999) (counsel's failure to object at trial to the testimony of an eyewitness was not objectively unreasonable because counsel may have preferred cross-examination to exclusion of the witness); *Arnold v. Evatt,* 113 F.3d 1352, 1363 (4th Cir. 1997) (failure to object at trial to evidence discrediting a witness's testimony could reasonably have been part of a trial strategy)). Given the relatively unimportant nature of the potentially leading questions, a competent attorney could easily have decided for tactical reasons not to object; such objections might well have tried the jury's patience, for example, or resulted in longer and more damaging answers from the witness. *See Gardner v. Ozmint*, 511 F.3d 420, 428-29 (4th Cir. 2007) (finding no deficient performance where counsel chose for tactical reasons not to object to objectionable testimony).

Moreover, Mr. Warren has not shown that there is a reasonable probability that the result of his proceeding would have been different if his trial counsel had objected to any of these leading questions. A review of the trial record shows that the State presented

evidence that was well above a minimal level sufficient to convict Mr. Warren of first-degree murder. This evidence included Mr. Warren's confession, physical evidence of Mr. Warren's finger- and handprints on Ms. Johnson's car (in which her body was found), and witness testimony placing Mr. Warren and Ms. Johnson together the night of the murder. *See Warren*, 348 N.C. at 92, 499 S.E.2d at 437. The prosecutor's method of questioning did not change the value of this evidence, and objections from defense counsel to leading questions would not have undermined confidence in the evidence. Mr. Warren, therefore, has not satisfied the prejudice prong of *Strickland* by demonstrating a reasonable probability of a different outcome. The Court denies Ground Nine.

L. <u>Ground Ten</u>

In Ground Ten, Mr. Warren alleges that his trial counsel were constitutionally ineffective because they did not object to improper instructions from the trial court on flight and second-degree murder. Doc. 4 at 32. The state MAR court denied this claim as procedurally defaulted under N.C. Gen. Stat. § 15A-1419(a)(3) because Mr. Warren did not raise the claim on direct appeal. *Warren*, No. 90 CRS 20090, Doc. 82-2 at p. 4. The state court further ruled that the claim was without merit because the direct appeal opinion found no plain error in the jury instructions. *Id.* Because this claim is without merit under both AEDPA deferential and *de novo* review, the Court will not address the procedural bar. *See* discussion *supra* Section III.B at pp. 11-14.

Mr. Warren has not satisfied either prong of *Strickland* in his presentation of this claim. During the guilt phase of the trial, the court gave the jury the standard North Carolina instruction about flight, which stated, in part, that "evidence of flight may be

considered by you, together with all the other facts and circumstances in this case, in determining whether the combined circumstances amount to an admission or show a consciousness of guilt." *Warren*, 348 N.C. at 112, 499 S.E.2d at 448. Mr. Warren contends that, because his counsel conceded his guilt for second-degree murder, the flight instruction was not required. Doc. 13 at 30. On direct appeal, the state supreme court ruled that the instruction on flight was an accurate statement of North Carolina law and further explained that the instruction was allowable because Mr. Warren did not plead guilty to second-degree murder, which required the prosecution to prove all elements of the charged offense. *Warren*, 348 N.C. at 112, 499 S.E.2d at 448-49. As discussed *supra* pp. 48-50, the instruction on flight was appropriately given. Mr. Warren has not shown that the state court's decision was an unreasonable application of its own law or that failure to object to a valid jury instruction was deficient performance under *Strickland*.

Mr. Warren also contends that his counsel should have objected to a jury instruction about second-degree murder. Doc. 4 at 21. The instruction at issue was taken verbatim from the North Carolina Pattern Jury Instructions, and the state supreme court concluded that the instruction was an accurate statement of the law. *See Warren*, 348 N.C. at 113, 499 S.E.2d at 449. Counsel cannot be considered ineffective for not objecting to jury instructions that contained accurate statements of the law. *See McHone v. Polk*, 392 F.3d 691, 707-08 (4th Cir. 2004) (declining to find prejudice under *Strickland* where trial court accurately instructed jury on law). The Court, therefore, denies Ground Ten.

M. Ground Eleven

In Ground Eleven, Mr. Warren avers that his trial counsel were constitutionally ineffective because they did not object to an erroneous jury sentencing form. The state MAR court ruled that this claim was both procedurally defaulted and without merit. *Warren*, No. 90 CRS 20090, Doc. 82-2 at p. 4. Regardless of whether the procedural default applies, *see* discussion *supra* Section III.B at pp. 11-14, Mr. Warren's claim fails on its merits *de novo*, as well as under AEDPA's more exacting deferential standard.

Mr. Warren contends that his trial counsel should have objected to the jury sentencing form's treatment of the diminished capacity circumstance that read, "One or more of us finds this mitigating." Doc. 4 at 34. According to Mr. Warren, the correct instruction would have been, "One or more of use [sic] finds this mitigating circumstance to exist." *Id.* Mr. Warren complains that the instruction given "forced jurors to find that a statutory mitigating circumstance, even if it were found to exist, had no mitigating value." *Id.* The State responds that the error on the jury sentencing form was merely a clerical error and that the judge corrected the error in his oral instructions to the jury. Doc. 87 at 1-3.

Although Mr. Warren did not raise his ineffective assistance of counsel claim on direct appeal, he did raise the claim that the jury sentencing form was flawed. The state supreme court had ruled several times that the instruction was a correct statement of the law and ruled that Mr. Warren had given them no reason to overrule their prior holdings. *Warren*, 348 N.C. at 128, 499 S.E.2d at 458. The State notes that the MAR court denied

the ineffective assistance of counsel claim on the merits because the state supreme court found the sentencing form to be harmless error. Doc. 16 at 36, 38.

Mr. Warren relies on several state cases to support his argument that his trial counsel were constitutionally ineffective for not objecting to the sentencing form. Doc. 13-5 at 15-16. In *State v. Baker*, 338 N.C. 526, 565, 451 S.E.2d 574, 597 (1994), the state supreme court granted the appellant a new sentencing hearing because of an error in the jury sentencing form. The error in *Baker*, however, was significant in that it characterized a statutory mitigating circumstance, that "the defendant had 'no significant history of prior criminal activity,' N.C. Gen. Stat. § 15A-2000(f)(1)," as a non-statutory mitigating circumstance, "the defendant had no record of criminal convictions." *Baker*, 338 N.C. at 565-66, 451 S.E.2d at 597-98. Additionally, the issues and recommendation form given to the jury asked the jurors, for each mitigating circumstance, whether "[o]ne or more of us finds this circumstance and deem[s] it to have mitigating value," which was a misstatement of the law, because, having found a statutory mitigating circumstance, the jury must give it weight. *Id.* at 567-68, 451 S.E.2d at 599.

Mr. Warren asserts that *Baker* is similar enough to this case to support his argument that his counsel were ineffective for not challenging his own sentencing form, but *Baker* is easily distinguishable. In *Baker*, the court confronted two errors in the sentencing proceeding that misstated the law about the jury's consideration of mitigating circumstances, and the oral instructions from the judge did not cure these errors. *Id.* In Mr. Warren's case, three words were left off of the sentencing form, but the oral

instructions from the judge stated the law correctly.[22]  *Warren*, 348 N.C. at 117, 499

S.E.2d at 451-52.  *Baker* does not support Mr. Warren's argument.

Similarly, Mr. Warren's reliance on *State v. Jennings* is misplaced.  *See* Doc. 84 at

3 (citing *State v. Jennings*, No. 89-CRS-9322, Doc. 84-1 (N.C. Super. Ct. June 20,

2013)).  In that case, trial counsel did not object when the court treated a statutory

mitigating circumstance as a non-statutory mitigating circumstance.  *Id.* at pp. 6-8.  Such

a substantive legal error supported the claim that trial counsel performed deficiently and

that the appellant was prejudiced by their failure to seek a remedy for the court's

misstatement of the law.

In Mr. Warren's case, even if his counsel could be considered to have performed

deficiently by not objecting to the missing three words on the sentencing form, Mr.

Warren suffered no prejudice because the judge's oral instructions to the jury were a

correct statement of the law.  *See Landrum v. Anderson*, No. 1:96-cv-641, 2005 WL

3965399, at *42 (S.D. Ohio Nov. 1, 2005) (Merz, Mag. J.) (finding no ineffective

---

[22] When instructing the jury on mitigating circumstances, the trial judge explained the specific mitigating circumstance and the burden of proof and then instructed:

> Accordingly, as to this mitigating circumstance, I charge that if one or more of you find the facts to be as all the evidence tends to show, you will answer "Yes" as to mitigating circumstance No. 2 on the Issues and Recommendation form. However, if none of you finds this circumstance to exist because the defendant has not persuaded you by a preponderance of the evidence that the facts supporting this circumstance are credible or convincing, you would so indicate by having your foreman write "No" beside this issue on the Issues and Recommendation form.

*Warren*, 348 N.C. at 117, 499 S.E.2d at 451-52.

assistance where verdict form was confusing but oral instructions were correct statement of the law), *adopted* 2006 WL 1027738 (S.D. Ohio Apr. 17, 2006), *aff'd in part sub nom. Landrum v. Mitchell*, 625 F.3d 905 (6th Cir. 2010); *State v. Robinson*, 773 S.E.2d 573 (table), 2015 WL 2374535, at *3-6 (N.C. Ct. App. May 19, 2015) (finding no fundamental error where correct oral instructions cured clerical errors in jury verdict forms).  Because Mr. Warren has not proven that he was prejudiced by the omission of three words on the sentencing form, the Court denies Ground Eleven.

N. Ground Twelve

In Ground Twelve, Mr. Warren maintains that his trial counsel provided constitutionally deficient assistance by neither moving to strike nor requesting a cautionary or curative instruction after Mr. Warren's own expert witness testified that Mr. Warren was already on death row.  Doc. 4 at 36.  Mr. Warren did not raise this claim on direct appeal but raised it in his MAR.  The state court found that the claim was procedurally barred under N.C. Gen. Stat. § 15A-1419(a)(3) because Mr. Warren was in a position to raise it on direct appeal and did not do so.  *Warren*, No. 90 CRS 20090, Doc. 82-2 at pp. 4-5.  Additionally, the MAR court denied this claim on its merits.  *Id.* Whether this claim was procedurally barred or considered on the merits does not matter, *see* discussion *supra* Section III.B at pp. 11-14, because it does not meet the *Strickland* requirements for constitutionally deficient performance and prejudice.

Mr. Warren has cited no United States Supreme Court case holding that an attorney's failure to object to or request a cautionary instruction for these types of comments constitutes either cause or prejudice under *Strickland*.  *See* Doc. 4 at 36-38;

Doc. 13-5 at 16-18.  He cites to a Ninth Circuit case to support his claim, *see* Doc. 13-5 at

17 (citing *United States v. Span*, 75 F.3d 1383 (9th Cir. 1996)), but that case is different

in kind and degree.  In *Span*, the court found ineffective assistance of counsel where

counsel both did not establish an adequate foundation for an affirmative defense and did

not request a jury instruction on that affirmative defense.  75 F.3d at 1389.[23]  Here, in

contrast, a witness merely made a passing, ambiguous reference to the fact, unsurprising

in context, that Mr. Warren was on death row.

The trial court had granted Mr. Warren's motion *in limine* to prohibit the State

from placing before the jury any evidence that Mr. Warren had already received a death

sentence.  Pretrial Mots. Tr. at 20-21, Doc. 53-2 at 21-22.  During the penalty phase of

Mr. Warren's trial, his attorney called Dr. Seymour Halleck, a psychiatrist, to testify as a

mitigating witness about Mr. Warren's capacity to appreciate the criminality of his

conduct, among other things.  *See* Trial Tr. Vol. 9 at 1537, 1556, Doc. 53-12 at 6, 25.  His

attorney asked Dr. Halleck about Mr. Warren's "ability to function while incarcerated,"

and in his reply, Dr. Halleck mentioned that Mr. Warren was on death row.  *Id.* at 1557,

Doc. 53-12 at 26.  Dr. Halleck's full response was:

> He is doing quite as well as one could do on death row right now, and feels
> that that's where he belongs.  He told me that he feels most comfortable
> when he's institutionalized, and in many ways he feels that he has been

---

[23] "It thus is clear that counsel inadvertently lost the Spans' their excessive force defense by
failing to request an instruction that the Spans' self-defense in the face of an excessive use of
force by the marshals is an affirmative defense.  Moreover, they failed to request an instruction
explaining an element of the offense, that excessive use of force in the pursuit of official duty is
not considered a good faith performance of official duties within the definition of section 111.
And counsel failed to establish a foundation for an excessive force defense, which would at least
have allowed the Spans to obtain reversal on appeal."  *Span*, 75 F.3d at 1389.

almost certain to end up there throughout his life, and feels he will spend the rest of his life in prison or be executed. He's quite willing to spend the rest of his life in prison.

*Id.*

First, when someone is on trial for capital murder and the jury knows the death penalty is a possible punishment, a passing reference to being "on death row" is not an explicit statement that Mr. Warren had received the death penalty after conviction for another murder. Moreover, taken as a whole, these remarks appear likely to help, not hurt, Mr. Warren. They portray a person aware that he has difficulties engaging in normal society, who could do well spending the rest of his life in prison. On the whole, they make a case for a life sentence.

Mr. Warren has not demonstrated that trial counsel's failure to move to strike these remarks or request a curative instruction was ineffective. *Strickland* requires a reviewing court to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (quotation omitted). A failure to object can be "the product not of ineffectiveness but of strategy." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016); *see also Humphries*, 397 F.3d at 234 ("[I]t is well established that failure to object to inadmissible or objectionable material for tactical reasons can constitute objectively reasonable trial strategy under *Strickland*."). Here, counsel's decision not to move to strike or request a curative instruction could well have been a product of his "reasonable professional judgment[]," *Jones v. Barnes*, 463 U.S. 745, 754

(1983), either that the psychiatrist's comments did not harm his client or that drawing the court and jury's attention to the death row remark would do more harm than good. Because Mr. Warren has not proven that his trial counsel's performance was constitutionally deficient under *Strickland*, the Court denies Ground Twelve.

O. Ground Thirteen

In Ground Thirteen, Mr. Warren asserts that his trial counsel were constitutionally ineffective because they did not object when the prosecutor referred to Mr. Warren's prior capital and non-capital offenses, which Mr. Warren asserts revealed to the jury that he was already under a death sentence. Doc. 4 at 38. The state MAR court denied this claim as both procedurally barred and without merit. *Warren*, No. 90 CRS 20090, Doc. 82-2 at p. 5. Regardless of the procedural bar, *see* discussion *supra* Section III.B at pp. 11-14, this ground has no merit because Mr. Warren has not proven that his trial counsel performed deficiently or that he suffered prejudice as a result.

Mr. Warren cites a Sixth Circuit case finding ineffective assistance after counsel's repeated "failure to recognize that the prosecution was continually making improper comments concerning [the defendant's] post-arrest silence." *Gravley v. Mills*, 87 F.3d 779, 785-86 (6th Cir. 1996);[24] Doc. 13-5 at 18. *Gravley* supports the proposition that

---

[24] "During the course of the trial, Gravley's counsel failed to object to, *inter alia:* (1) the initial introduction of Gravley's silence at his second interrogation; (2) Gravley's probation revocation hearing transcript, which dealt with an otherwise unrelated conviction for negligent vehicular homicide, being introduced as an exhibit; (3) the state's cross-examination of Gravley about his post-arrest silence at his probation revocation hearing; (4) an erroneous jury instruction sought by the state that told the jury that it could consider Gravley's prior criminal record to explain what had taken place at trial; and (5) the state's final argument which invited the jury to

repeated "failure to object to very serious instances of prosecutorial misconduct," when coupled with a failure "to preserve any of the egregious errors committed by the prosecution for appeal" and counsel's unawareness that "she was waiving any rights," constitutes ineffective assistance of counsel. 87 F.3d at 785-86. Such a series of serious errors is very different from what occurred here.

In his opening statement at the penalty phase, the prosecutor told the jury they would hear evidence of two aggravating factors:

> Number one will be that this defendant, Lesley Warren, has been previously convicted of a capital murder. We will show you evidence that he has been convicted of the capital or first degree murder of Jayme Hurley in Asheville, North Carolina. . . . We will show you another aggravating factor in that he has been convicted of another crime of violence, in that he has been convicted of the non capital [sic] murder of a lady in South Carolina.

Trial Tr. Vol. 8 at 1291, Doc. 53-11 at 9. Mr. Warren asserts that the "distinction between the capital and non-capital convictions clearly signaled to the jury that Petitioner already had one death sentence, a fact which was highly prejudicial and had been ordered excluded from revelation to the jury." Doc. 13-5 at 17.

This argument fails on a preliminary point. The prosecutor did not say what sentence was imposed in Buncombe County, nor did the prosecutor explicitly say that Mr. Warren had received a death sentence. As the jury knew from the extensive voir dire questioning about their ability to consider both a life and a death sentence, *e.g.*, Trial Tr.

---

consider constitutionally protected silence as evidence of Gravley's guilt and recent fabrication." *Gravley*, 87 F.3d at 785.

Vol 1 at 24-25, Doc. 53-4 at 27-28, conviction of a capital felony did not automatically mean that Mr. Warren was under a death sentence.  *See State v. Cummings*, 352 N.C. 600, 633, 536 S.E.2d 36, 59 (2000).

Furthermore, the statutory language of the (e)(2) aggravating circumstance uses the word *capital*.  N.C. Gen. Stat. § 15A-2000(e)(2).  The prosecutor was therefore well within the bounds of propriety to quote the language of the statute itself when telling the jury the aggravating factor that he would attempt to prove during the sentencing hearing. Trial counsel cannot be faulted for not objecting to a completely acceptable mention of the aggravating factor on which the State was relying.

Additionally, defense counsel minimized any possible negative inference the jury might have drawn from the prosecutor's opening statement by successfully convincing the judge to submit the South Carolina conviction under the (e)(2) aggravating factor and obtaining a jury instruction that made no distinction between capital and non-capital for the two previous convictions.  *See* Trial Tr. Vol. 8 at 1517, Doc. 53-11 at 235.  Counsel made a reasonable strategic decision not to bring attention to the prosecutor's permissible language in front of the jury but instead to address it with the judge and create a solution to minimize its impact.

Mr. Warren has not made a showing sufficient to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, in connection with these two remarks that he asserts refer to an earlier death sentence.  The Court, therefore, denies Ground Thirteen.

P.  Ground Fourteen

In Ground Fourteen, Mr. Warren maintains that his trial counsel were ineffective because they argued that the court should submit Mr. Warren's South Carolina conviction as support for the (e)(2) aggravating circumstance.  The state MAR court denied this claim on the merits.  *Warren*, No. 90 CRS 20090, Doc. 82-2 at pp. 5-6.  Because the state court denied this ground on its merits, this Court may only grant relief if the state court's decision was contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts.  It was not.

Mr. Warren asserts that his trial counsel were constitutionally deficient when they argued to the trial court that the judge should submit Mr. Warren's South Carolina murder conviction as support for the aggravating circumstance that Mr. Warren had previously been convicted of a capital crime, N.C. Gen. Stat. § 15A-2000(e)(2), instead of submitting it under the (e)(3) circumstance for previous violent felony.  *See* Doc. 13-5 at 18-19.  The state MAR court reasoned that trial counsel made an acceptable tactical decision to ask that the South Carolina conviction be included as support for the (e)(2) circumstance because it was strategic to seek only one aggravating factor instead of the two available to the prosecution.  *Warren*, No. 90 CRS 20090, Doc. 82-2 at p. 6.

During the sentencing hearing, Mr. Warren's counsel argued to the court that Mr. Warren's South Carolina conviction should be treated as a capital conviction and thus included as evidence for the (e)(2) aggravating circumstance.  Trial Tr. Vol. 8 at 1515-18, Doc. 53-11 at 233-36; *compare, State v. Bunning*, 338 N.C. 483, 493, 450 S.E.2d 462, 467 (1994)(holding that a crime which is not punishable by death is not a capital felony

as defined in North Carolina's death penalty statute) *with State v. Cummings*, 352 N.C. 600, 633, 536 S.E.2d 36 (2000)(holding that a defendant need not have received the death penalty for conviction to be for capital felony so long as it was a possible sentence).  It is apparent from the argument they made to the trial judge during the charge conference that they understood that Mr. Warren could not have received a death sentence for the South Carolina murder, given the pretrial decisions made by the court; nonetheless, they presented case law to the judge and argued for several pages of the trial transcript that the court could and should classify the conviction as capital and consider it evidence to support the (e)(2) factor as the sole aggravating factor.  Trial Tr. Vol. 9 at 1570-76, Doc. 53-12 at 39-45.  Counsel's efforts reflect a reasoned tactical decision that presenting one aggravating factor to the jury would be more beneficial to Mr. Warren than presenting two aggravating factors and that a jury instruction to that effect would minimize the distinction between the two convictions.  *Id.* at 1570-71, Doc. 53-12 at 42-43.  The fact that counsel was unsuccessful in obtaining a life sentence does not prove counsel was ineffective.  *See Lawrence,* 517 F.3d at 716 (noting that "effective trial counsel cannot always produce a victory for the defendant"); *accord, Bell v. Evatt*, 72 F.3d 421, 429 (4th Cir. 1995).

It was not an unreasonable application of *Strickland* for the state MAR court to conclude that Mr. Warren's counsel made a reasonable strategic decision and that Mr. Warren was not prejudiced by it.  *See Bell v. Cone*, 535 U.S. 685, 701-02 (2002) (applying *Strickland's* "strong presumption" that counsel's conduct is generally within the range of reasonable assistance and ruling that it was not objectively unreasonable for

the state court to hold that counsel's decision not to present a closing argument was a legitimate tactical decision). Were this Court to review this claim *de novo*, it would agree that Mr. Warren's counsel made a reasonable tactical decision about the (e)(2) aggravating circumstance and thus provided constitutionally competent assistance of counsel. The Court denies Ground Fourteen.

Mr. Warren also asserts that the prejudicial effect of counsel's errors should be addressed cumulatively. Doc. 13-5 at 10-11 (citing *Williams v. Taylor*, 529 U.S. 362 (2000)). As the Court has not identified any such errors under the "highly deferential" standard *Strickland* requires, this point is without merit.

Q. Ground Fifteen

In Ground Fifteen, Mr. Warren contends that submission of his South Carolina conviction as support for the (e)(2) aggravating circumstance violated his rights to a fair and impartial sentencing hearing and to freedom from cruel and unusual punishment. The state MAR court denied this claim as procedurally barred by N.C. Gen. Stat. § 15A-1419(a)(3) because Mr. Warren did not raise the claim on direct appeal. *State v. Warren*, No. 90 CRS 20090, Doc. 4-2 at pp. 12-13 (N.C. Super. Ct. Jan. 8, 2002) (initial order denying MAR).

Mr. Warren asserts that the aggravating circumstance used to support his death sentence was based on a conviction that was not capital, the South Carolina murder conviction. Doc. 4 at 42. He states that, although South Carolina prosecutors initially sought the death penalty in his case, the court struck the death-eligible aggravator before trial and tried his case non-capitally. *Id.* Mr. Warren contends that using this non-capital

conviction as evidence to support the capital-conviction aggravator violates the *Gregg v. Georgia*, 428 U.S. 153 (1976), prohibition against "arbitrary and capricious" sentencing procedures. Doc. 4 at 43. As noted *supra*, *see* Section III.B. at pp. 11-14, the State relies on the procedural bar.

Mr. Warren's argument that use of his non-capital South Carolina conviction as an (e)(2) aggravating factor should invalidate his death sentence is without merit. Mr. Warren's trial counsel made a compelling and ultimately successful argument that the South Carolina conviction should be considered capital, *see supra* Section III.P at p. 69-70, thus making any error invited error. The Supreme Court has long recognized that "a court can not [sic] be asked by counsel to take a step in a case, and later be convicted of error because it has complied with such request, for . . . '[a] defendant in a criminal case cannot complain of error which he himself has invited.'" *Shields v. United States*, 273 U.S. 583, 586 (1927) (quoting 17 *Corpus Juris* 373, 374). While the Fourth Circuit has acknowledged a potential exception to the invited error doctrine when there is a threat to the integrity of the judicial process or a miscarriage of justice, *United States v. Lespier*, 725 F.3d 437, 450 (4th Cir. 2013), those circumstances do not exist when the matter at issue is one of trial strategy. *Id.*

Furthermore, the facts of the South Carolina conviction would have been before the jury in any event, whether as a basis for the (e)(2) aggravating circumstance or as a basis for the (e)(3) aggravating circumstance. During the sentencing proceeding, the jury heard evidence that Mr. Warren murdered Velma Gray in South Carolina and then murdered Jayme Hurley in Buncombe County in a manner similar to the way in which he

murdered Ms. Johnson.  *See* Trial Tr. Vol 8 at 1311-12, 1334-36, Doc. 53-11 at 29-30, 52-54.  Whether the South Carolina murder was capital as defined by (e)(2) or simply a previous felony involving the use of violence as defined by (e)(3), the jury would have heard the same facts and circumstances.  The Supreme Court has determined that an erroneous aggravating factor, even in a weighing state like North Carolina, will not invalidate a death sentence if the facts and circumstances of the factor support another valid sentencing factor:

> An invalidated sentencing factor (whether an eligibility factor or not) will render the sentencing unconstitutional by reason of its adding an improper element to the aggravation scale in the weighing process *unless* one of the other sentencing factors enables the sentencer to give aggravating weight to the same facts and circumstances.

*Brown v. Sanders*, 546 U.S. 212, 220 (2006) (footnote omitted).

Even assuming, *arguendo*, that the trial court committed a constitutional-level error by allowing the South Carolina conviction to be included under the (e)(2) aggravator, Ground Fifteen fails the harmless error test.  When a federal habeas court finds that a state court made a constitutional error, it must then assess its prejudicial impact under the "'substantial and injurious effect' standard" elucidated in *Brecht v. Abrahamson*, 507 U.S. 619 (1993).  *Fry v. Pliler*, 551 U.S. 112, 114 (2007).  This Court, therefore, may only grant relief if the error by the state court "had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht*, 507 U.S. at 623 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

In Mr. Warren's case, the jury heard evidence that he murdered three women.  Whether the murder of Ms. Gray in South Carolina was classified as an (e)(2) capital

conviction or an (e)(3) violent felony, the jury was confronted with the undisputed fact that Mr. Warren strangled and killed three women in relatively quick succession and the prosecutor's argument that he was a serial killer. Furthermore, the (e)(2) aggravating circumstance was supported by the capital murder of Ms. Hurley in Buncombe County. Given these facts, the Court cannot say that the inclusion of the South Carolina conviction as support for the (e)(2) circumstance, if it were error, had a substantial and injurious effect on the jury's decision to vote for a death sentence. The Court, therefore, denies Ground Fifteen.

R. Ground Sixteen

In Ground Sixteen, Mr. Warren alleges that the prosecution used evidence of an invalid prior conviction to support the (e)(2) aggravating circumstance. Mr. Warren asserts that his Buncombe County conviction is invalid because it was obtained through the use of an illegal plea agreement. Doc. 4 at 45; Doc. 4-2 at 1. He is currently challenging the validity of that conviction in state court in Buncombe County. *See* Doc. 89. This Court has no jurisdiction to rule on the validity of that conviction. Because Mr. Warren has produced no ruling from an appropriate court invalidating the conviction, the Court denies Ground Sixteen without prejudice.

S. Ground Seventeen

In Ground Seventeen, Mr. Warren maintains that the trial court erroneously denied an instruction on Mr. Warren's lack of parole eligibility because future dangerousness was at issue during sentencing. Mr. Warren relied on *Simmons v. South Carolina*, 512 U.S. 154, 171 (1994), which guarantees a defendant an instruction on parole ineligibility

when the alternative to a death sentence is life without parole and when the prosecution argues future dangerousness. Doc. 4-2 at 3. The state supreme court denied this claim on the merits. *Warren*, 348 N.C. at 123, 499 S.E.2d at 455. Because the state court denied this claim on the merits, this Court may not grant relief unless the state court's decision was contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts.

In evaluating this claim, the state supreme court ruled that *Simmons* did not require the admission of evidence about Mr. Warren's lack of eligibility for parole for two reasons. First, the Court held that the prosecutor did not argue future dangerousness at Mr. Warren's trial. *Id.* at 122-123, 499 S.E.2d at 455. Instead, the prosecutor argued that Mr. Warren was a serial killer who deserved the death penalty for the crimes he had already committed. *Id.* at 123, 499 S.E.2d at 455. Thus, future dangerousness was not at issue. Second, the state court noted that *Simmons* addressed statutory systems in which life without parole was the alternative to a death sentence. *Id.* at 122, 499 S.E.2d at 455. North Carolina did not adopt life without parole as the alternative to a death sentence until 1994. *See State v. Conaway*, 339 N.C. 487, 520 n.1, 453 S.E.2d 824, 845 n.1 (1995) (citing N.C. Gen. Stat. § 15A-1380.5 (Supp. 1994); N.C. Gen. Stat. § 15A-2002 (Supp. 1994)). Because Mr. Warren murdered Ms. Johnson before October 1, 1994, the alternative to a death sentence in his case was a life sentence with the possibility of parole. *See id.* at 498, 520, 453 S.E.2d at 831, 845 (noting a defendant guilty of first-degree murder was "eligible for parole if given a life sentence"); *State v. Price*, 337 N.C. 756, 756, 762-63, 448 S.E.2d 827, 828, 831 (1994) (citing N.C. Gen. Stat. § 15A-

1371(a1) (1988)) (same). Therefore, the state court also ruled that, consistent with state law in effect before *Simmons*, evidence about lack of parole eligibility was not relevant in Mr. Warren's capital sentencing proceeding, and there was no error. *Warren*, 348 N.C. at 122-23, 499 S.E.2d at 455.

Mr. Warren contends that because the prosecutor argued future dangerousness and because Mr. Warren was not actually eligible for parole because of his death sentence given in Buncombe County, the *Simmons* ruling should have applied in his case. Doc. 4-2 at 3. Mr. Warren asserts that the prosecutor argued future dangerousness when he stated the following:

> [he] has a habit . . . of violating the rights of others with no guilt, no conscience, no remorse . . . That's what [their doctor] said about Lesley Warren. No conscience, no guilt, no remorse and has a habit—a habit, a pattern a repeated series of acts. He has done it over and over and over. What will stop him? Over and over and over.

Doc. 13-5 at 23 (quoting Trial Tr. Vol. 9 at 1606, Doc. 53-12 at 75). Mr. Warren states that the prosecutor compounded the future-dangerousness argument by stating that Mr. Warren "is addicted to killing women." *Id.* at 24 (quoting Trial Tr. Vol. 9 at 1627, Doc. 53-12 at 96). Because of these arguments, Mr. Warren contends that *Simmons* required the trial court to tell the jury that Mr. Warren was ineligible for parole. *Id.* at 24-25.

The first question to answer is whether the state court unreasonably found that the prosecutor did not argue future dangerousness. During a lengthy argument, the prosecutor focused on Mr. Warren's actions in committing the three murders of which he was convicted. Trial Tr. Vol. 9 at 1598-1631, Doc. 53-12 at 67-100. He argued that Mr. Warren had a pattern of killing women in horrific ways and then covering up their

murders.  *Id.* at 1601-1608, Doc. 53-12 at 70-77.  He discussed the aggravating factors at issue and the mitigating circumstances Mr. Warren put forth.  *E.g.*, *id.* at 1609-12, Doc. 53-12 at 78-81.  He characterized Mr. Warren as a cowardly serial killer of women who showed no remorse.  *Id.* at 1616, Doc. 53-12 at 85.  The final thrust of his argument was that the death penalty was the only way for the three murdered women to achieve some sense of justice and dignity.  *Id.* at 1629-31, Doc. 53-12 at 98-100.

Mr. Warren cites the prosecutor's question, "What will stop him?," and the statement that Mr. Warren had a habit of killing women "[o]ver and over and over."  Doc. 13-5 at 26-27.  Read in context, this statement came at the end of a lengthy description of the murders of the three victims and a discussion of an expert's evaluation of Mr. Warren as a sociopath.  Trial Tr. Vol. 9 at 1601-06, Doc. 53-12 at 70-75.  It was reasonable for the state supreme court to interpret the prosecutor's statements as a rhetorical emphasis on the point that Mr. Warren had proven himself to be a serial killer and that he had not been stopped until he had killed three women in succession.

The statement, "How many more chances do we have to give him?," *id.* at 1627, Doc. 53-12 at 96, should be read in a similar context.  Each "chance" the prosecutor was discussing was the murder of a woman:

> The Bible tells us, you know, to turn the other cheek, that we should not—we should always give people a second chance, if you can.  Well, you know, he had a second chance, and he chose not to use that second chance. You know, he killed Velma Gray right here.  He killed her.  Didn't stop. Didn't stop him.  You know, he had to go and kill Jayme Hurley and bury her.  You remember those insects and maggots in her, just like in Katherine Johnson.  Well, here's his second chance.  And then he went and murdered Katherine Johnson, number three.  He had two chances, didn't he?  How

many chances do we have to give him?  How many more chances do we
have to give him?  One, two, three.

*Id.* at 1626-27, Doc. 53-12 at 95-96.  Again, it was reasonable for the state court to

conclude that the prosecutor's statement about chances was rhetorical emphasis on the

three murders Mr. Warren had committed: his three chances.

The Court may not grant relief unless the state court's adjudication on the merits

"resulted in a decision that was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States;

or . . . was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."  28 U.S.C. § 2254(d).  Mr. Warren is not

entitled to relief merely because he can make a colorable argument that the state court

erred; indeed, he is not entitled to relief even if he shows that the state court was wrong.

The Supreme Court has reminded courts many times that "unreasonable" does not mean

merely "incorrect" or "erroneous."  *E.g.*, *Williams*, 529 U.S. at 411-12.  Rather, "[a]s a

condition for obtaining habeas corpus from a federal court, a state prisoner must show

that the state court's ruling on the claim being presented in federal court was so lacking in

justification that there was an error well understood and comprehended in existing law

beyond any possibility for fairminded disagreement."  *Harrington*, 562 U.S. at 103.

The interpretation of the North Carolina Supreme Court that the prosecutor did not

argue future dangerousness was not unreasonable based on a reading of the entire closing

argument.  The state court placed the arguments identified by Mr. Warren in context and

determined that these arguments did not raise future dangerousness.  *Warren*, 348 N.C. at

122-23, 499 S.E.2d at 455.  The identified statements by the prosecutor constitute only a few words and phrases in an extensive closing argument that was focused on Mr. Warren's past acts and status as a serial killer.  This interpretation of the record was reasonable and was not so mistaken as to be completely lacking in justification.

With future dangerousness not at issue, *Simmons* did not apply, and Mr. Warren was not entitled to place lack of parole eligibility before the jury.  Therefore, the Court need not address Mr. Warren's argument that the state court was mistaken in concluding that Mr. Warren was eligible for parole.  The state court did not unreasonably apply *Simmons*.  The Court denies Ground Seventeen.

T. <u>Ground Eighteen</u>

In Ground Eighteen, Mr. Warren asserts that the trial judge erred by not recusing himself from Mr. Warren's MAR proceedings.  Mr. Warren points out that the trial judge, Judge Greeson, chose to recuse himself from certain issues raised by Mr. Warren's MAR, including the ineffective assistance of counsel claims.  Doc. 4-2 at 5.  Judge Greeson, however, did not recuse himself from the remaining issues.  Mr. Warren alleges that Judge Greeson's failure to recuse himself from considering all MAR claims made the MAR proceedings unfair.

North Carolina law provides that an MAR "may be heard and determined in the trial division by any judge who . . . is empowered to act in criminal matters in the district . . . or superior court district . . . in which the judgment was entered."  N.C. Gen. Stat. § 15A-1413(a).  The statute also empowers the "judge who presided at the trial" to

act upon the motion, regardless of whether the judge has remained in the original district. *Id.* at § 15A-1413(b).

The State contends Mr. Warren has not exhausted this claim. Doc. 16 at 43. The AEDPA states in part that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). The Supreme Court has emphasized the importance of exhaustion to habeas cases:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Failure to exhaust claims by allowing the state court an opportunity to rule on the claim requires a federal court to dismiss those claims as procedurally defaulted. *See id.* at 848 (citing *Coleman*, 501 U.S. at 731-32).

Although Mr. Warren is correct that he could not have raised this claim on direct appeal, he had an opportunity to present his MAR recusal claim to the North Carolina Supreme Court for discretionary review after the denial of his MAR petition. N.C. Gen. Stat. 15A-1422(c)(3). Mr. Warren did not do so and thus did not give the state court a fair opportunity to rule on the claim. In the interests of comity and the exhaustion doctrine, the Court dismisses Ground Eighteen as procedurally defaulted.

Even if this were not so, a federal habeas court generally may not grant relief to a state prisoner based upon a claim that state post-conviction proceedings were flawed. In *Lawrence,* the Fourth Circuit relied on the principle that a "state prisoner has no federal constitutional right to post-conviction proceedings in state court," and denied the petitioner's claim that the state MAR court violated due process when his trial judge also served as his post-conviction judge. *Lawrence*, 517 F.3d at 716-17. "[E]ven where there is some error in state post-conviction proceedings, a petitioner is not entitled to federal habeas relief because the assignment of error relating to those post-convictions proceedings represents an attack on a proceeding collateral to detention and not to the detention itself." *Id.* at 717.

## IV.    Certificate of Appealability

"[A] state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition." *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003). A certificate of appealability will issue if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If the district court denies a habeas claim on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" in order to receive a certificate of appealability. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Beck v. Angelone*, 261 F.3d 377, 380, 386-87 (4th Cir. 2001) (analyzing whether certificate of appealability should issue in capital case by relying on *Slack's* standard). If the district court denies a habeas claim on procedural grounds, then to receive a certificate of appealability, the petitioner must show "that

jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and . . . would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, Mr. Warren's claims fail for multiple reasons. None raise a substantial issue for appeal concerning the denial of a constitutional right affecting the conviction, nor do any of his arguments raise a debatable procedural ruling that matters. Therefore, the Court denies a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2).

## V.  Conclusion

Mr. Warren has not proven that the state courts' rulings on his claims were contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts. Neither has Mr. Warren shown that any of his potentially procedurally barred claims have sufficient merit either to overcome a procedural default via cause and prejudice or to succeed in a *de novo* review. Having presented no viable claim for relief, Mr. Warren's petition must be denied.

It is therefore **ORDERED** that Mr. Warren's petition for a writ of habeas corpus, Doc. 4, is **DENIED**. A certificate of appealability will not issue.

This the 20th day of January, 2017.

UNITED STATES DISTRICT JUDGE